**ON ALL CAUSES OF ACTION**

29.    For costs of suit incurred herein,

30.    For such other, further relief as the Court may deem proper.


Dated:  July 11, 2007

                              THE SCOTT LAW FIRM


                              By:_____
                              JOHN HOUSTON SCOTT,
                              Attorneys for Plaintiffs MICHAEL TOSCHI and
                              TRACY TOSCHI


**DEMAND FOR JURY TRIAL**

Plaintiffs Michael Toschi and Tracy Toschi demand trial by jury in this action.

Dated:  July 11, 2007

                              THE SCOTT LAW FIRM


                              By:_____
                              JOHN HOUSTON SCOTT,
                              Attorneys for Plaintiffs MICHAEL TOSCHI and
                              TRACY TOSCHI

# EXHIBIT A

**DEPARTMENT OF PUBLIC WORKS**



Road Operations - Permits
455 County Center, 2/Fl.
Redwood City, CA 94063
(650) 363-1822

NEIL R. CULLEN
Director of Public Works

| **\*\*FOR OFFICE USE ONLY\*\*** |
| Date Completed: _____ |
| By: _____ |

# ENCROACHMENT PERMIT

**Michael Toschi**
Permittee Name

**2511 Park Road**
Address

**Redwood City, CA 94062**
City, State Zip

**(650) 367-9025**
Area Code & Phone No.

**08-23-06**
Date

As requested by the above addressee, hereinafter known as the "**PERMITTEE**," the County of San Mateo, hereinafter known as the County, HEREBY GRANTS AN **ENCROACHMENT PERMIT** TO:

**Project Description**:   Remove soil and concrete material bermed at top of slope to location outside the road right of way; remove dead and fallen oak tree at property line; fill hole resulting from tree removal with native soil; plant creeping daisy and English laurel behind line of existing trees as shown on attached drawing. Notify Inspector prior to starting work.

**Project Location:**   2511 Park Road, Redwood City, CA

The work authorized by this **Permit,** hereinafter known as the "**ENCROACHMENT**," shall be subject to all the terms, conditions, and restrictions set forth herein.  This permit consists of the **Special Provisions** attached and made a part hereof and the Drawings referenced above.  The project, as specifically described, is to be strictly construed and no other activity shall be permitted. **Notify County Road Inspector 48 hrs prior to starting work.**

The Permittee and/or his contractor shall indemnify and save harmless the **County**, its officers, agents, employees and servants from all claims, suits or actions of every name, kind and description, brought for, or on account of, injuries to or death of any person or damage to property of any kind whatsoever and to whomever belonging, including but not limited to the concurrent active or passive negligence of the County, officers, agents, or employees and servants, resulting from the performance of any work authorized or required by this Permit of Permittee and/or his contractor, their officers, agents, employees and/or servants, provided that this shall not apply to injuries or damage for which County has been found in a court of competent jurisdiction to be solely liable by reason of its own negligence or willful misconduct.

The duty of Permittee to indemnify and save harmless as set forth herein, shall include the duty to defend as set forth in Section 2778 of the California Civil Code.

A SURETY DEPOSIT OF $ -0-          or INSPECTION DEPOSIT OF $   -0-  , and
INSURANCE for P/L of $ Legal Min. and P/D of $ Legal Min. IS A CONDITION OF THIS PERMIT.

**THIS PERMIT IS VALID FOR THE PERIOD**   8-24-2006          to     9-15-2006

"USA" Inquiry (Applicant Complete):

Neil R. Cullen
Director of Public Works

_____    _____              _____
Date              Number

Lisa A. Ekers
Road Operations Manager

Encl:  Permittee Request/Sketch   Yes            Special Provisions  Yes

**CONTACT ROAD DIVISION INSPECTOR 48 HRS, Mark Marelich at (650) 599-7273 TO SCHEDULE INSPECTION**

2511 PARK ROAD PLANTING PROPOSAL SKETCH

LISA, THE GOAL FOR MOST EFFECTIVE PLANTING, AS WE DISCUSSED, IS BASICALLY ALONG THE EDGE OF WHERE THE STEEP SLOPE MEETS AND TRANSITIONS INTO THE FLAT AREA ALONG THE PAVEMENT. I PROMISE WE WONT INTRUDE INTO THE ROADWAY SEE OR CREATE AN OBSTACLE FOR MAINTANANCE.

RED LINE IS MY PROPOSED PLANTING LINE. USING PRE-ESTABLISHED ROAD SET BACKS FROM FENCE OAK-TREE AND PLUM TREE

EXISTING OAK TREE

PLUM TREE

FALLEN OAK-TREE

RED FENCE

PARK ROAD

COUNTY OF SAN MATEO
DEPARTMENT OF PUBLIC WORKS
ROAD OPERATIONS - PERMITS
COUNTY GOVERNMENT CENTER
455 County Center 2ⁿᵈ Floor
Redwood City, CA 94063-1663



## SPECIAL PROVISIONS

1. **ACCEPTANCE OF SPECIAL PROVISIONS.** It is understood and agreed by the Permittee that the doing of any work under this permit shall constitute acceptance of the Special Provisions.

2. **NO PRECEDENT ESTABLISHED.** This Permit is granted with the understanding that this action is not to be considered as establishing any precedent on the question of the expediency of permitting any certain kind of encroachment to be erected within right of way of County streets, roads, highways or other areas.

3. **NOTICE PRIOR TO STARTING WORK.** Before starting work, the Permittee shall notify the Director of Public Works, specifically the Road Division at (650) 363-4103. Such notice shall be given at least **48 hours in advance of the date work is to begin**. Any work prior to said notification will be subject to rejection, and/or removal for non-compliance with the notification requirement. The Director of Public Works reserves the right to pass on the responsibility of the contractor who proposes to do the work under this permit.

4. **KEEP PERMIT ON THE SITE.** This Permit or a copy thereof shall be kept at the site of work and must be shown to any representative of that department or any law enforcement officer on demand.

5. **PERMIT FROM OTHER AGENCIES.** The party or parties to whom this Permit is issued shall, whenever the same is required by law, secure the permit or consent to any work hereunder from the Public Utilities Commission of the State of California, or any other public agency having jurisdiction, and this Permit shall be suspended until such permit is obtained.

6. **PROTECTION OF TRAFFIC.** Adequate provision shall be made for the protection of the traveling public. Barricades shall be placed with warning lights at night and flaggers employed, all as may required by the particular work in progress. All work shall be planned and carried out so that there will be the least possible inconvenience to the traveling public except for the specific work permitted.

7. **STOCKPILING OF MATERIAL.** No construction materials or debris shall be stored within eight feet (8') of the edge of pavement or traveled way, or within any shoulder area where the shoulders are wider than eight feet (8'). In no event will any material be stored in a ditch, swale or any other type of watercourse.

8. **GENERAL CLEAN UP.** Upon completion of the work, all brush, timber, scraps and material shall be entirely removed from the right of way and any areas affected by the work shall be left in a presentable condition, and to the satisfaction of the Director of Public Works. Attention is also directed to Section 24, "Water Pollution Control," of this document.

9. **STANDARDS OF CONSTRUCTION.** All works shall conform to the Standard Specifications of the County of San Mateo, State of California, which are identical with the Standard Specifications, July, 2000 of the State of California, Business and Transportation Agency, Department of Transportation, except as set forth in Resolution No. 63418 adopted February 15, 2000.

10. **SUPERVISION BY DIRECTOR OF PUBLIC WORKS.** All the works shall be done subject to the supervision of and to the satisfaction of the Director of Public Works. The Director may appoint an Engineer and/or an Inspector to supervise and approve the work. The terms "Engineer" and "Inspector" shall have the same meaning for purposes of this Permit.

11. **FUTURE MOVING OF INSTALLATION.** The Permittee is advised that whenever construction, reconstruction, maintenance of any work on the street, highway or other areas may require the removal of the installation permitted herein, the Permittee shall, upon request of the Department, immediately remove the installation at the sole expense of, the Permittee.

12. **EXPENSE OF INSPECTION.** For work that requires the presence of an Inspector or Engineer of the Department, the costs associated with salary, traveling expenses, tests on materials and other incidentals shall be paid by the Permittee. The Permittee may be required to deposit with the Department cash in an amount determined by the Director of Public Works to be sufficient to cover the anticipated costs of inspections. Any remaining balance shall be refunded to the Permittee upon completion and acceptance of the permitted work.

13. **LIABILITY FOR DAMAGES.** The Permittee is responsible for all liability for personal injury or property damage that may arise out of work herein permitted or which may arise out of failure on the Permittee's part to perform his obligations under this Permit in respect to maintenance. In the event any claim of such liability is made against the County of San Mateo or any Department, officer, or employee thereof, the Permittee shall defend, indemnify, and hold each of them harmless from such claim. This Permit shall not be effective for any purpose unless and until the above-named Permittee files with the Department, the following Certificates of Insurance: Public Liability in the amount of $_____ and Property Damage in the amount of $_____ and Property Damage in the amount of $_____. The Permittee shall carry Workmen's Compensation Insurance to cover all labor employed on work covered by this Permit.

14. **MAKING REPAIRS.** If the Director of Public Works shall so elect, repairs to paving and other improvements which have been disturbed shall be made by employees of the Department and the expenses therefor shall be borne by the Permittee. The Director of Public Works shall require a deposit before starting repairs in an amount sufficient to cover the estimated cost thereof. The Director of Public Works will give reasonable notice of his election to make such repairs. If the Director of Public Works does not so elect, the Permittee shall make such repairs in accordance with the Department's construction standards. In every case, the Permittee shall restore any portion of the street, road, highway or other area which has been excavated or otherwise disturbed, to its former condition or to the minimum standards as set forth in these Special Provisions, except where the Director of Public Works elects to make repairs as provided in this paragraph and except where provision to the contrary is made in this Permit.

15. **CARE OF DRAINAGE.** If the work item herein contemplated shall interfere with the established drainage, ample provision shall be made by the Permittee to provide for it as may be directed by the Director of Public Works. All storm drainage work shall comply with the provisions of the San Mateo County Drainage Policy and the County's National Pollution Discharge Elimination System (NPDES) permit.

16. **MAINTENANCE.** The Permittee agrees by the acceptance of this Permit to exercise reasonable care to maintain properly any encroachment placed in the street, road, highway or other areas, and to exercise reasonable care in inspecting for and immediately repairing and making good any injury to any portion of the street, road, highway or other areas which occurs as a result of the maintenance of the encroachment in the street, road, highway or other areas, or as a result of the work done under this Permit, including any and all injury to the street, road, highway or other areas which would have occurred had such work not been done or such encroachment not placed therein.

## PIPES, CONDUITS, GAS PUMPS, ETC.

17. **CROSSING ROADWAY.** On select roads or at locations directed by the Director of Public Works, services and other small diameter pipes shall be jacked or otherwise forced underneath pavement without disturbing same. Service pipes will not be permitted inside of metal culvert pipes used as drainage structures. No tree roots two inches or more in diameter shall be cut. Material shall be removed from around root system so as to avoid damage thereto. Roots shall be protected with burlap wrapping while exposed.

18. **TUNNELING.** No tunneling will be permitted except on major work as may be specifically set forth on the face hereof.

19. **DEPTH OF PIPES AND EXCAVATION LIMITS.** There shall be a minimum of two and one-half feet (2 ½ ') of cover over all pipes or conduits. The limits of excavation for pipes shall be one foot (1') minimum outside the outside diameter of the pipe unless otherwise ordered by the Director of Public Works.

20. **BACKFILLING.** Backfilling operations shall conform to the following requirements. Across roadway sections, curbs, sidewalks, and other paved or surfaced areas, material for use as structure backfill shall have a sand equivalent value of not less than 20. The percentage composition by weight as determined by laboratory sieves shall conform to

the following grading:

| Sieve Size | Percentage Passing Sieves |
|:---:|:---:|
| 3" | 100 |
| No. 4 | 35 – 100 |
| No. 30 | 20 – 100 |

Backfill material, properly moistened, shall be placed in horizontal, uniform layers not exceeding 0.67-foot in thickness, before compaction, and shall be brought up uniformly. Each layer of backfill material shall be compacted to a relative compaction of not less than 95 percent.

The backfill material at other locations may consist of material from excavation, free from stones or lumps exceeding 3 inches in greatest dimension, vegetable matter, or other unsatisfactory material and shall be compacted to a relative compaction of not less than 90 percent. When the material from excavation is unsuitable for use as backfill, it shall be disposed of as directed by the Inspector and suitable material approved by the Inspector shall be furnished by the Permittee.

**CERTIFICATION OF COMPACTION AND COPIES OF COMPACTION TEST RESULTS SHALL BE SUBMITTED TO THE SAN MATEO COUNTY PUBLIC WORKS DEPARTMENT INSPECTOR FOR REVIEW AND APPROVAL PRIOR TO ACCEPTANCE OF THE WORK BY COUNTY.**

**THE COUNTY INSPECTOR SHALL DETERMINE THE NEED AND FREQUENCY OF THE TESTING. ALL COSTS ASSOCIATED WITH COMPLYING TO THE ABOVE SHALL BE BORNE BY THE APPLICANT/DEVELOPER OR HIS CONTRACTOR.**

21.    **SURFACE MATERIALS.**

A.    **Aggregate Base:**  Mineral aggregate material removed shall be placed with a ¾" maximum Class 2 Aggregate Base Material, and shall conform to Section 26 of the Standard Specifications of the County of San Mateo. The percentage composition by weight of aggregate base shall conform to the following grading when determined by Test Method No. California 202, modified by Test Method No. California 905 when applicable.

| Sieve Size | Individual Test | Percentage Passing Sieves Moving Average |
|:---:|:---:|:---:|
| 1" | 100 | 100 |
| ¾" | 87 – 100 | 90 – 100 |
| No. 4 | 30 – 60 | 35 – 55 |
| No. 30 | 5 – 35 | 10 – 30 |
| No. 200 | 0 – 12 | 2 – 0 |

The aggregate base shall conform to the following quality requirement.

| Tests | Test Method Northern California | Individual Test | Moving Average |
|---|---|---|---|
| Resistance < R-Value> | 301 | 78 minutes | |
| Sand Equivalent | 217 | 28 minutes | 31 minutes |
| Durability Index | 229 | 35 minutes | |

The depth of aggregate base placed shall be equivalent to the depth of aggregate material removed, unless the existing material is less than 6 inches (6"), in which case, a minimum of 6 inches (6") compacted material will be required.

The aggregate base shall be watered and compacted in layers not to exceed 0.50-foot compacted thickness. The relative compaction of each layer of compacted base material shall not be less than 92 percent of that determined by Test Method No. California 216, for individual tests and not less than 95 percent for moving average.

B. **Asphalt Concrete:** Surfaced material to be used, to replace all other types of pavements, shall consist of ¾ -inch maximum, medium grade, Type B Asphalt Concrete and shall conform to Section 39 of the Standard Specifications of the County of San Mateo. Minimum thickness of Asphalt Concrete placed shall be 0.17-feet in compacted thickness. Steam-refined paving asphalt to be mixed with aggregate shall be Performance Grade (PG) 70-10 or as directed by the Engineer.

C. **Gravel or Crushed Rock Surfaced Roads:** Whenever a gravel or crushed rock surfaced street is trenched, the workmanship and materials involved in backfilling and placing surface material shall conform to Section 21 and 22A, of these Special Provisions. During rolling of the final course of the surface material, it shall be sprinkled with water to the extent that sufficient fines will be flushed to the surface to fill the voids and create a seal surface.

22. **PIPES ALONG ROADWAY.** Pipes and utilities paralleling the pavement shall be located at the distance from traveled way and at such depth as specifically directed on the face hereof. No tree roots two inches or more in diameter shall be cut. Material shall be removed from around root system so as to avoid damage thereto. Roots shall be protected with burlap wrapping while exposed.

23. **SAWCUTTING.** All excavation on existing Asphalt Concrete pavement shall be saw-cut with NO exception. Water from sawcutting operations shall not be allowed to enter into any drainage or watercourse.

## 24. WATER POLLUTION CONTROL

The Permittee is advised that failure to fully comply with the provisions of this Section, and all requirements listed in any resource agency permits obtained for the project, where applicable, shall constitute substantial non-compliance with the requirements of the Clean Water Act, the National Pollution Discharge Elimination System (NPDES) and this Permit.

Construction sites are common sources of water pollution. Materials and wastes that blow or wash into a storm drain, gutter, or street have a direct impact on local creeks and wetlands, San Francisco Bay and the Pacific Ocean. The Permittee shall be responsible for any environmental damage caused by his operations and those of his contractors or employees.

Water pollution shall be defined as including the introduction of any material, including sediment, trash, or other debris, equipment or vehicles into any watercourse, including creeks, ponds, ditches, storm drain facilities, and any surfaces immediately tributary to those areas, except as specifically authorized by any resource agency permits. Water pollution controls are materials and measures that prevent the introduction of any material to any watercourse. Water pollution control materials and measures may consist of temporary silt fencing; straw mulch/straw logs; spill cleanup materials; pavement sweepers; sand bags or continuous berms; etc.

Water pollution controls shall be applied, maintained and removed by the Permittee as specified herein and as directed by the Inspector. For construction activities occurring between June 15 and September 15, sufficient quantities of applicable water pollution control materials shall be available at the work site prior to commencing any work. For construction activities occurring between September 15 and June 15, all applicable water pollution control measures shall be installed and all applicable water pollution control materials shall be available at the work site prior to commencing any work.

If the measures being taken by the Permittee are inadequate to control water pollution effectively, the Inspector may direct the Permittee to revise the operations. No further work shall be performed until the water pollution control measures are

adequate and, if also required, a revised water pollution control program has been approved. Attention is directed to "Permittee Response" of this Section for additional provisions relating to correction of the Permittee's water pollution control program, and payment.

## Permittee Response

The Permittee is advised that he may be required to respond to the work site after hours and/or on weekends or holidays to mitigate potential water pollution, soil erosion or sedimentation and/or to repair damaged water pollution controls. Failure to respond within four (4) hours of notification by the Department of Public Works shall constitute substantial non-compliance with these Special Provisions.

Should the County Road Maintenance Division be required to provide any after-hours, weekend or holiday repairs to the Permittee's water pollution controls due to the Permittee's failure to respond, all costs associated with providing that response, including overtime wages, equipment and material costs, shall be deducted from the Permittee's deposit and/or invoiced to Permittee, as applicable. The Permittee shall also be fully responsible for any fines, penalties or mitigations imposed by any regulatory agency caused by his failure to respond, regardless if the County Road Maintenance Division attempts any repairs or pollution prevention work in his absence.

## Excavation and Grading

The Permittee shall not commence any excavation, backfilling, grading or stockpiling operations until water pollution control materials have been delivered to the work site. Excavation and grading activities shall be scheduled for dry weather periods. Excavation and grading activities shall not be allowed to commence or continue during periods of rainfall or runoff.

## General Housekeeping

The Permittee shall control the amount of runoff entering upon disturbed construction and staging areas, particularly during excavation, to reduce the amount of water pollution controls required. Temporary diversion berms and/or sandbags may be employed to divert runoff from entering upon construction and staging areas as approved by the Inspector.

Paved surfaces shall be dry-swept as necessary to prevent water pollution. If pavement flushing is necessary, silt ponds, gravel sacks or other techniques to trap sediment and other pollutants shall be required.

All wastes shall be disposed of properly outside the highway right of way and, where applicable, in accordance with the Permittee's approved Construction Waste Management plan.

## Stockpiles

All soil and/or rock stockpiles shall be protected against wind, rainfall and runoff at all times. Plastic sheeting may be used to cover soils (including aggregate base), and shall be securely anchored by sandbags or other suitable means. At no time will any stockpiled materials be allowed to erode into any watercourse or onto any roadway or other tributary surface.

## Spill Prevention and Response

Fluid spills shall not be hosed down. The Permittee shall use dry cleanup methods (absorbent materials, cat litter, and/or rags) whenever possible. If water must be used, the Permittee will be required to collect the water and spilled fluids and dispose of it as hazardous waste. Spilled fluids shall not be allowed to soak into the ground or enter into any watercourse.

Spilled dry materials shall be swept up immediately. The Permittee shall not wash down or bury any dry spills. Spills on dirt areas shall be removed by digging up and properly disposing of contaminated soil. The Permittee shall report significant spills to the Inspector immediately

## Tire Washing

Should the Permittee's equipment be tracking soil onto a public road, the Inspector shall require a tire-washing swale at the exit from the construction site and/or staging areas. The Inspector shall also require that soil be removed from the traveled way by whatever means necessary to prevent water pollution, dust or any other nuisance to the public.

**Roadwork and Paving**

The Permittee shall avoid creating excess dust when breaking and/or removing asphalt or concrete. Broken asphalt and/or concrete pieces shall be completely removed from the site as soon as possible, or shall be stored in a separate, secure stockpile protected against from wind, rainfall and runoff. Material derived from roadway work shall not be allowed to enter any watercourse, or tributary area.

Water/slurry resulting from sawcutting operations shall be shoveled or vacuumed and completely removed from the site. The Permittee shall not be permitted to sweep or flush any sawcutting debris or slurry into any drainage, watercourse, or tributary area.

**Concrete and Mortar**

The Permittee shall ensure that concrete and mortar are contained within the lines and grades shown on the Plans and not allowed to leave the construction site. Any excess concrete, mortar and/or mix water placed or spilled beyond the limits of concrete construction as shown on the Plans shall be immediately collected, removed and disposed of properly.

No washout of concrete mixers or trucks will be permitted at the project site.

Dry sacks of cement shall be protected against wind, rainfall and runoff. Opened sacks of cement shall be secured and protected from spilling.

Neil R. Cullen
Director of Public Works

# EXHIBIT B

## CITIZEN'S COMMENDATION/ COMPLAINT FORM

Name: _Michael & Tracy Tocchin_        Phone: _415 771 9025_

Address: _7511 Park Rd_        City: _Emerald Hills_ Zip: _94062_

Date & Time of Occurrence: _Multiple_        Location: _Home_

Names & I.D. Numbers of Employee(s) Involved (if known):

_Don Dallimonti_

Details: Please describe the incident, including names, witnesses and any other factual supporting information:

_Several counts of verbal assault , threats and_
_psychologically unstable and aggressive behavior._
_Also abuse of power and manipulation in county_
_business, violent & reckless driving in both personal_
_vehicles and county sheriff patrol vehicle_

attach additional sheets if necessary

Signature: _____        Date: _16 Sept 6_

Send To: Sheriff Don Horsley
Hall of Justice and Records
400 County Center
Redwood City, CA 94063

### Admonition Pursuant to 148.6 P.C.

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICE CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZEN'S COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN'S COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE KEPT BY THIS AGENCY FOR AT LEAST FIVE YEARS.
IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE, IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.
I have read and understood the above statement.

Complainant _____

# EXHIBIT C

**CERTIFIED MAIL. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

REDWOOD CITY, CA 94063

| | |
|---|---|
| Postage | $ | $1.05 |
| Certified Fee | $2.40 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ | $3.45 |

11/10/2006

Sent To

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, June 2002          See Reverse for Instructions

7005 3110 0000 1177 2027

VIA CERTIFIED MAIL

9, October, 2006

Neil R. Cullen
Director of Public Works
555 County Center 5th floor
Redwood City, CA 94063

Dear Director Cullen:

On Monday morning, 6 October, 2006 I met with Lisa Ekers from your department at my home to discuss our pending encroachment permit issue. Other than the final placement of two shrubs, I have complied with my obligation of our original agreement and requirements of the issued permit.

I have removed the berm and concrete pieces, as well as planted the English Laurel shrubs accurately as stated in the permit (See attached photographs). The final two shrubs will be placed after the completion of a fence repair which was damaged by the fallen heritage oak tree which I expect to complete in less than a week.

In addition to my obligations of our agreement, your department agreed to repair the swale along the road edge which extends along the length of both my property and my neighbors property. Please find attached an inspection report which confirms the looming safety hazards posed to my property, my neighbor's property and our family's which is caused by the lack of repair to the swale and road condition.

Please send me your current position regarding your NOTICE TO REMOVE ENCROACHMENT as well as upholding your commitment to complete the swale repair. The rainy season is upon us, and I look forward to your reply.

Sincerely,

Michael Toschi
2511 Park Road
Redwood City, CA 94062

# FOUNDATION
# TECHNOLOGIES, INC.

October 30, 2006

Mr. Michael Toschi
2511 Park Road
Redwood City, CA 94062

**Fax:**

**Re: Inspection Report on Runoff from Park Road**
**2511 Park Road**
**San Mateo County, CA**

Dear Mr. Toschi:

As requested, we have made a visual inspection at the above referenced property in regards to reported water runoff from the street onto the upper section of your property. Our inspection was made on: Friday, October 27, at 3:30 pm. At that time, you walked us through your property and pointed out your concerns regarding this runoff from the street above, and the subsequent impact to your property.

At that time, we noted the following:

- Along the upslope side of your property, Park Road (the street) is severely crowned near its center such that runoff from the street is directed onto your property. It was apparent that originally, the street was pitched toward the inboard edge, or the side away from your property, as the existing drainage facilities are located on that side of the street. It appeared that through the years, the street has settled on the downslope side such that it no longer slopes inboard.

- There were obvious signs of distress and instability on the slope on your property below this section of the street. We noted active downslope creep as well as leaning Oak trees. You pointed out the stump of a large Oak which had fallen last winter.

- There were signs of erosion at the base of the slope, in your backyard. There was a sinkhole noted at this location. There were signs of significant runoff into the backyard area.

- To mitigate the problem of the runoff, you have recently constructed a shallow swale and berm along your side of the street. This prevents runoff onto your property and directs the flow to its previous destination further down the street where it discharges into an existing County maintained culvert.

- We understand that the County of San Mateo, Public Works Department, has requested that you remove this swale and berm in response to a complaint from the neighbor on the opposite side of the street.

P.O. Box 620401  ◈  Woodside, CA 94062
FAX (650) 851-3698  ◈  **(650) 851-3697**

# FOUNDATION
# TECHNOLOGIES, INC.

10/30/06
page 2

## DISCUSSION / CONCLUSION

It is our opinion, based on our visual observations, that it would be imprudent to remove the swale and berm constructed by you, unless the County is prepared to construct a more permanent asphalt or concrete lined swale. Removal of the existing could, and probably would,  create further instability on the upper slope of your property. This could result in, undercutting of the roadbed, the loss of more heritage Oak trees, as well as landsliding on your property, and present a serious safety hazard to you and your neighbor.

## LIMITATIONS

Our services consist of professional opinion, conclusions, and recommendations, based on visual observations only. These are made in accordance with generally accepted engineering practice. THIS REPORT SHOULD NOT BE CONSTRUED AS A GUARANTEE FOR FUTURE PERFORMANCE, EITHER WRITTEN OR IMPLIED.

It has been a pleasure to be of service to you on this project. If you should have further questions regarding this report, please do not hesitate to call.

Very truly yours,
FOUNDATION TECHNOLOGIES, INC.
A California Corporation

Bruce Matheson, P.E.
President

# EXHIBIT D

**Department of Public Works**



# COUNTY OF SAN MATEO

555 COUNTY CENTER, 5ᵀᴴ FLOOR • REDWOOD CITY • CALIFORNIA 94063-1665 • PHONE (650) 363-4100 • FAX (650) 361-8220

BOARD OF SUPERVISORS
MARK CHURCH
RICHARD S. GORDON
JERRY HILL
ROSE JACOBS GIBSON
ADRIENNE TISSIER

NEIL R. CULLEN
DIRECTOR

November 15, 2006

Mr. Michael Toschi
2511 Park Road
Redwood City, CA  94062

Dear Mr. Toschi:

*Re:    Removal of Non-Permitted Encroachment in the Public Right-of-Way –*
*2511 Park Road, Redwood City*

I extended the courtesy of having County staff meet with you after you received the "Notice to Remove Encroachment" and after you came to the office and stated that you had complied with the conditions of the encroachment permit that was issued to you.  The permit requires that you "remove soil and concrete material bermed at top of slope to location outside the road right-of-way" and plant "English Laurel behind line of existing trees as shown on attached drawing." Your August 23rd and September 13th e-mails to Lisa Ekers stated that you would move the berm and locate the trees per the permit, but that the work might be delayed due to your travel schedule and the unavailability of your gardener.

Staff met with you on November 6, 2006, and reaffirmed that the soil and concrete material bermed at the top of the slope is still within the right-of-way, and that your recently planted English Laurel is not located behind the line of existing trees as shown on the drawing that was attached to your permit.  You have not complied with the conditions of the encroachment permit and the items as listed in the "Notice to Remove Encroachment" are still in place.  Therefore, the "Notice to Remove Encroachment" remains in effect.

Very truly yours,

Neil R. Cullen
Director of Public Works

NRC:sdd
F:\USERS\ADMIN\P&S\PERMITS\2006\Toschi Letter Nov 10.doc

# EXHIBIT E

VIA CERTIFIED MAIL

19 December 2006, 2006

Neil R. Cullen
Director of Public Works
555 County Center 5th floor
Redwood City, CA 94063

Dear Director Cullen:

On Sunday the 10th of December 2006 while inspecting my property, we noted that all twelve of the expensive English Laurel shrubs that we had planted in September had been forcibly removed from my property. In place of the protective landscaping we had planted on our private property was straw covering the holes and grounds where the plants had been located. Your crew also clear cut much of our pre-existing Bay Laurel trees and other foliage which created a natural privacy screen on approximately 4 or 5 December 2006.

We have further noted that at or about the same time that my protective landscaping was removed, the County installed an asphalt berm and swale which stops short of any drainage sink or culvert intended to divert run-off water and creates a safety hazard. Please find enclosed a copy of a recent report from a soils engineer, Bruce Matheson.

Our neighbors have informed us that it was the County who removed the shrubs. We request an explanation as to why the County trespassed on our property and removed landscaping without any notice or our permission. We would also like have the removed landscaping returned to us.

On 6 November, were present when your employee Lisa Ekers inspected the plantings and ran a guide tape to measure and ascertain the correct placement of the plants. We asked her if we needed to make any changes and she replied that she had "no further recommendations."

We are very concerned this recent action has created a hazard that is potentially life threatening to our neighbor, Grace Whipps. This is compounded by the fact your employee, Steve Ballisteri, recently informed us that he would not to respond to an

# FOUNDATION
# TECHNOLOGIES, INC.

December 14, 2006

Mr. Michael Toschi
2511 Park Road
Redwood City, CA 94062

**Fax:**

**Re: Re-Inspection Report**
**2511 Park Road**
**San Mateo County, CA**

Dear Mr. Toschi:

As requested, we have re-inspected the runoff problem on Park Road, which runs along the upslope side of your residence. We had previously issued a letter report outlining our findings. Since that time, we understand that the County of San Mateo Public Works Department has made certain repairs to the road. We were asked to inspect these repairs and issue an opinion on their effectiveness.

Pursuant to that request, we visited the site on Wednesday, December 13. At that time, we noted the following:

- An asphalt swale has recently been constructed along the edge of the roadway, for approx. 40 ft. However, this swale ends approx. 5 ft. from the downslope property line and as a result, the collected water in the swale is now directly discharged onto your property and rear slope. Runoff does not flow to its previous destination further down the street where it could discharge into an existing County maintained culvert.

CONCLUSION

It is our opinion, based on our most recent observations, that the newly installed asphalt swale is incomplete and should be extended to the property line to eliminate the gap. If this is not done, it could result in undercutting of the roadbed, the loss of more heritage Oak trees, as well as landsliding on your property, and present a serious safety hazard to you and your neighbor.

LIMITATIONS

Our services consist of professional opinion, conclusions, and recommendations, based on visual observations only. These are made in accordance with generally accepted engineering practice. THIS REPORT SHOULD NOT BE CONSTRUED AS A GUARANTEE FOR FUTURE PERFORMANCE, EITHER WRITTEN OR IMPLIED.

# FOUNDATION
# TECHNOLOGIES, INC.

12/19/06
page 2


It has been a pleasure to be of service to you on this project. If you should have further questions regarding this report, please do not hesitate to call.


Very truly yours,
FOUNDATION TECHNOLOGIES, INC.
A California Corporation



Bruce Matheson, P.E.
President

# EXHIBIT F

**Department of Public Works**

BOARD OF SUPERVISORS
MARK CHURCH
RICHARD S. GORDON
JERRY HILL
ROSE JACOBS GIBSON
ADRIENNE TISSIER

NEIL R. CULLEN
DIRECTOR



# COUNTY OF SAN MATEO

555 COUNTY CENTER, 5ᵀᴴ FLOOR • REDWOOD CITY • CALIFORNIA 94063-1665 • PHONE (650) 363-4100 • FAX (650) 361-8220

December 29, 2006

Mr. Michael Toschi
2511 Park Road
Redwood City, CA 94062

Dear Mr. Toschi:

Re:     *Removal of Non-Permitted Encroachment in the Public Right-of-Way – 2511 Park Road, Redwood City*

The encroachment permit that was issued to you on August 23, 2006, permitted your removal of a dead and fallen oak tree, filling of the hole resulting from removal of the tree, planting of creeping daisy and English laurel behind the line of existing trees, and required the removal of your non-permitted soil and concrete berm by September 15, 2006. In applying for the permit, you agreed to comply with all of its terms and conditions. We agreed to pave the drainage swale that would serve to channel stormwater down Park Road to the location between your and your neighbor's property, where stormwater has historically been allowed to run down the slope to the creek that is located on your and your neighbor's property. When you did not comply with the terms of the permit in a timely manner, we notified you that the County would remove the encroachments, including the English Laurel trees, if you did not have them removed.

Lisa Ekers met with you on November 6, 2006, and reaffirmed that the soil and concrete material bermed at the top of the slope was still within the right-of-way, and that your recently planted English Laurels were not located behind the line of existing trees as shown on the drawing that was attached to your permit. She did not offer any additional or alternative recommendations since you had not yet complied with the conditions of the encroachment permit and the items listed in the "Notice to Remove Encroachment" were still in place. At no time did you comply with the conditions of the permit.

Therefore, per our notice to you, on December 4, 2006, the Department of Public Works removed twelve (12) plants and the soil and concrete berm from the public right-of-way adjacent to your parcel, backfilled the resulting planting holes, applied straw mulch to the area where the plants and berm were removed, and placed asphalt concrete pavement in the swale as we had previously indicated would be done. Staff then tested the swale by running water from the uphill end and confirmed that water ran in the swale and not over the edge, to the point where the swale had previously allowed water to run down the slope to the creek, in lieu of running in front of the adjoining properties to the intersection of Park Road and Woodland Way. The opening is near the common property line between you and your neighbor's property.

The recent paving of the drainage swale was not intended to and will not eliminate the issue of stormwater runoff on your property, and the runoff is likely to continue its historic pattern of draining onto your property. Your recent letter received on December 22, 2006, included a brief report from your Civil Engineer recommending that the swale be continued past your property to discharge down to the culvert at the

Mr. Michael Toschi
*Re:*     *Removal of Non-Permitted Encroachment in the Public Right-of-Way –*
          *2511 Park Road, Redwood City*
December 29, 2006

Page 2

intersection of Woodland Way and Park Road. However, the Engineer did not provide any discussion of the potential impacts that this may have on the adjoining properties if the water is redirected, or any supporting calculations. You and your Engineer may want to evaluate different options that you, or you and your neighbors may want to pursue. We will, in the interim, maintain the drainage paths as they existed prior to the encroachments and the subsequent removal of the encroachments, that you had installed in the public right-of-way. You must apply for and receive an encroachment permit prior to performing any further work in the public right-of-way.

You asked about the involvement of Mr. Dallimonti in my conduct and the conduct of Public Work's staff. Mr. Dallimonti has not had any contact with me, or to my knowledge with any Public Works' staff, since I wrote to him on August 15, 2006, explaining that staff had met with you, and you had agreed to remove the encroachments by August 21, 2006. I previously sent you a copy of my letter to Mr. Dallimonti.

You also stated that Mr. Balestieri of Public Works had advised you that Public Works would not respond to an emergency related to your property. This mischaracterizes your conversation with Mr. Balestieri, in which you requested that he bring sand bags out to your property, and he advised you that Public Works does not provide that service. Mr. Balestieri did advise you that sand bags are available at our maintenance yard in Redwood City. However, we will remove sand bags that are placed inappropriately in the public right-of-way or if their placement diverts the historic course of storm water that has not been approved through the encroachment permit process, which was the case in the recent removal of sandbags that were placed on the Park Road side of your property.

Very truly yours,

Neil R. Cullen
Director of Public Works

NRC:sdd
F:\USERS\ADMIN\P&S\PERMITS\2006\toschiREVcountycounseldec28afternoonfinaldec28versioin.doc
**F-36 (P)**

cc with enclosures:    Ms. Hannah Sowerwine, 603 Park Road, Redwood City, CA 94062
                       Ms. Grace Whipps, 607 Park Road, Redwood City, CA 94062
                       Mr. Bruce Matheson, Foundation Technologies, Inc.
                            P.O. 620401 Woodside, CA 94062

# EXHIBIT G



VIA CERTIFIED MAIL

8 January 2007

Neil R. Cullen
Director of Public Works
555 County Center 5th floor
Redwood City, CA 94063

Dear Director Cullen:

Per your letter December 9, 2006, though we disagree with numerous factual claims in your letter, for the purpose of this letter, we are responding directly to paragraph four, sentence one of your above mentioned letter.

I have owned the home at 2511 Park Road since 1991. Since then, including periods of historically heavy rainfall, runoff has never drained onto my property in the manner characterized in your letter. Several of my neighbors will attest to this fact including Grace Whipps and Pam Schnur.

Please provide all information of any type which you relied upon in your determination of the so called historical pattern of drainage onto my property.

Sincerely,

Michael and Tracy Toschi
2511 Park Road
Redwood City, CA 94062

Cc:    Grace Whipps
        Pam Schnur

# EXHIBIT H

**CH-140** Restraining Order After Hearing
to Stop Harassment

FILED
Clerk stamps date here when form is filed.
**SAN MATEO COUNTY**
FEB 6 2007
Clerk of the Superior Court
By _____
DEPUTY CLERK

(1) Your name *(person asking for protection)*:
MICHAEL & TRACY TOSCHI

Your address *(skip this if you have a lawyer): (If you want your
address to be private, give a mailing address instead)*:
2511 Park Rd

City: Redwood City  State: CA  Zip: 94062

Your telephone *(optional)*: ( 650 ) 367-9025

Your lawyer *(if you have one)*: *(Name, address, telephone
number, and State Bar number)*: _____
_____
_____

Fill in court name and street address:
Superior Court of California, County of
**SAN MATEO**

400 COUNTY CENTER
REDWOOD CITY, CA 94063

(2) Name of person to be restrained:
DON DALLIMONTI

Fill in case number:
Case Number: CIV 457966

Description:
Sex: ☒M ☐F  Height: 6 2"  Weight: 200  Race: Caucasian
Hair Color: Brown  Eye Color: Brown  Age: 45  Date of Birth: 6-25-60

(3) **Hearing**

There was a hearing:
on *(date)*: 2-6-07  at *(time)*: 9  ☒ a.m. ☐ p.m.  Dept.: 32  Rm: 4B
Susan Granberg ——————— made the orders at the hearing.
*(Name of judicial officer)*

These people were at the hearing:
a. ☒ Plaintiff *(the person in* (1)*)*  c. ☒ Plaintiff's lawyer *(name)*: John Houston Scott, Esq.
b. ☒ Defendant *(the person in* (2)*)*  d. ☒ Defendant's lawyer *(name)*: Michael L. Rains, Esq.

(4) **This Is a Court Order**

You must obey all the orders indicated below. If you do not obey this Order, you can be arrested and charged
with a crime. And you may have to go to jail, pay a fine of up to $1,000, or both.

(5) **Expiration Date**

This Order, except for an award of lawyer's fees, expires at:
*(time)*: _____ ☐ a.m. ☐ p.m. or ☒ midnight on *(date)*: 2-5-08
If no date is present, this Order expires three years from the date of issuance.

---

**This is a Court Order.**

Judicial Council of California, www.courtinfo.ca.gov
Revised January 1, 2005, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9
Approved by DOJ

**Restraining Order After Hearing
to Stop Harassment (CLETS)**
(Civil Harassment)

CH-140, Page 1 of 3
→
American LegalNet, Inc.
www.USCourtForms.com

Your name: _Michael + Tracy Toschi_

Case Number:
CIV 457966

**(6)** ☑ **Personal Conduct Orders**

You must *not* do the following things to the people listed in ① and ⑪ :

a. ☑ Harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, destroy personal property, keep under surveillance, or block movements.

b. ☑ Contact (directly or indirectly), telephone, send messages, mail or e-mail.

Peaceful written contact through a lawyer or a process server or other person for service of legal papers related to a court case does not violate these orders.

**(7)** ☑ **Stay-Away Order**

You must stay at least *(specify):* ____10____ yards away from:

a. ☑ The person listed in ①           e. ☑ Vehicle of person in ①   ☐ Vehicles of persons in ⑪
b. ☐ The people listed in ⑪           f. ☐ The protected children's school or child care
c. ☑ The home of the persons in ① and ⑪   g. ☐ Other *(specify):* _____
d. ☐ Jobs or workplaces of the persons in ① and ⑪

This stay away order does not prevent the person in ② from going to or from that person's home or place of work.

**(8)** **No Guns or Other Firearms**

You cannot own, possess, have, buy or try to buy, receive or try to receive, or in any other way get a gun or firearm.

**(9)** **Turn In or Sell Guns or Firearms**

You must:
- Sell to a licensed gun dealer or turn in to police any guns or firearms that you possess or control This must be done within 48 hours of receiving this order. But if you were at a hearing on this order, it must be done within 24 hours of the hearing.

- Bring a receipt to the court within 72 hours of receiving this order, to prove that guns have been turned in or sold. *(You may use CH-145 for this.)*

**(10)** ☑ **Other Orders** *(specify):* ① Don Dallimonti is exempt from the relinquishment requirement for his Smith & Wesson Model # 5409 .40 caliber gun as it is a necessary condition of continued employment per CCP § 527.9 (f). ② The County shall not destroy any other weapons relinquished by Don Dallimonti. ③ Paragraphs 6(a) + 6(b) above apply to Don Dallimonti directly + indirectly through a third party including his spouse.

**(11)** ☐ **Other Protected Persons**

List of the full names of all family and household members protected by these orders:

_____
_____
_____
_____

**This is a Court Order.**

Your name: _Michael + Tracy Toschi_

Case Number: _CIV 457966_

## Instructions for the Protected Person

**To the person in ①** *(Write the name of the person in ①):* _Michael + Tracy Toschi_

⑫ ☑ **Delivery to Law Enforcement**

If the court issues restraining orders, by the close of business on the date this Order is made, you or your attorney must deliver a copy of this Order and any proof of service forms to each law enforcement agency listed below:

Name of Law Enforcement Agency:
_Redwood City Police Dept._
_San Mateo County Sheriff_

Address (City, State, Zip):
_Redwood City, CA 94063_
_Redwood City, CA 94063_

⑬ ☐ **No Fee for Service of Order by Law Enforcement**

The sheriff or marshal will serve this Order without charge because the Order is based on stalking or a credible threat of violence resulting from a threat of sexual assault or stalking.

Date: _2-6-07_

▶ _[signature]_
*Judicial Officer*

## ❷ Warnings and Notices to the Restrained Person in

### You Cannot Have Guns or Firearms

You cannot own, have, possess, buy or try to buy, receive or try to receive, or otherwise get a gun while this Order is in effect. If you do, you can go to jail and pay a $1,000 fine. You must sell to a licensed gun dealer or turn in to police any guns or firearms that you have or control in accordance with item ⑨ above. The court will ask you for proof that you did so. If you do not obey this Order, you can be charged with a crime.

### Instructions for Law Enforcement

This Order is effective when made. It is enforceable anywhere in all 50 states, the District of Columbia, all tribal lands, and all U.S. territories and shall be enforced as if it were an Order of that jurisdiction by any law enforcement agency that has received the Order, is shown a copy of the Order, or has verified its existence on the California Law Enforcement Telecommunications System (CLETS). If the law enforcement agency has not received proof of service on the restrained person, and the restrained person was not present at the court hearing, the agency shall advise the restrained person of the terms of the Order and then shall enforce it. Violations of this restraining order are subject to criminal penalties.

*(Clerk will fill out this part)*

### Clerk's Certificate

Clerk's Certificate
*[seal]*

I certify that this *Restraining Order After Hearing to Stop Harassment (CLETS)* is a true and correct copy of the original on file in the court.

Date: _FEB - 6 2007_  Clerk, by _JOHN C. FITTON_ _____, Deputy

### This is a Court Order.

**Restraining Order After Hearing
to Stop Harassment (CLETS)**
(Civil Harassment)

CH-140, Page 3 of 3