**SCOTT LAW FIRM**

1375 Sutter Street, Suite 222
SAN FRANCISCO, CALIFORNIA
94109-7837
(415) 561-9601

JOHN HOUSTON SCOTT (State Bar #72578)
LIZABETH N. de VRIES (State Bar #227215)

**MOSLEY & GEARINGER LLP**

825 VAN NESS AVENUE, 4TH FLOOR
SAN FRANCISCO, CALIFORNIA
94109-7837
(415) 440-3102

BRIAN GEARINGER (State Bar #146125)

Attorneys for Plaintiff MICHAEL TOSCHI and TRACY TOSCHI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| MICHAEL TOSCHI, and TRACY TOSCHI,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN MATEO, DON DALLIMONTI, RHONDA DALLIMONTI, NEIL CULLEN, BRIAN LEE, DAVID WEIDNER, and DOES ONE through FIFTY, inclusive,<br><br>Defendants. | Case No. C-07-3625 MMC<br><br>**NOTICE OF MOTION FOR INJUNCTIVE RELIEF OF PLAINTIFFS MICHAEL TOSCHI AND TRACY TOSCHI AGAINST DEFENDANT COUNTY OF SAN MATEO**<br><br>Date: January 4, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom 7, 19th Floor<br><br>The Honorable Maxine M. Chesney, presiding<br><br>Date Action Filed:  July 13, 2007<br>Trial Date:  **November 3, 2008** |
|---|---|

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORDS:

PLEASE TAKE NOTICE that on Friday, January 4, 2008, at 9:00 a.m. in Courtroom 7, 19th Floor of the United States District Court for the Northern District of California, plaintiffs Michael Toschi and Tracy Toschi ("Plaintiffs") will bring a motion for injunctive relief against

PLAINTIFFS' NOTICE OF MOTION INJUNCTIVE RELIEF   1   U.S. DISTRICT COURT CASE NO. C-07-3625 MMC

1  defendant County of San Mateo (the "County"). Specifically, Plaintiffs seek a judicial
2  determination that the County's asphalt swale directed storm water runoff onto Plaintiffs'
3  property and thereby damaged Plaintiffs' property. Plaintiffs further seek a judicial
4  determination that the County must remove or redesign its asphalt swale in order to prevent
5  further damage to Plaintiffs' property.

6  This motion will be based upon this Notice of Motion, the Toschis' Brief in Support of
7  Motion for Preliminary Injunction, the declarations of Plaintiff Michael Toschi, Tom Linebarger,
8  Lilya Vorobey, Age Lyssand, Jack Purcell, Grace Whipps and Bruce Matheson in support of the
9  Toschis' Motion for a Preliminary Injunction, the papers and records on file in this action, and on
10 evidence and oral argument as may be presented at the hearing of this motion.

11 Dated: November 30, 2007

MOSLEY & GEARINGER LLP


By:_____/s/ Brian Gearinger
BRIAN GEARINGER
Attorneys for Plaintiffs MICHAEL TOSCHI and
TRACY TOSCHI

**SCOTT LAW FIRM**

1375 Sutter Street, Suite 222
SAN FRANCISCO, CALIFORNIA
94109-7837
(415) 561-9601

JOHN HOUSTON SCOTT (State Bar #72578)
LIZABETH N. de VRIES (State Bar #227215)

**MOSLEY & GEARINGER LLP**

825 VAN NESS AVENUE, 4TH FLOOR
SAN FRANCISCO, CALIFORNIA
94109-7837
(415) 440-3102

BRIAN GEARINGER (State Bar #146125)

Attorneys for Plaintiff MICHAEL TOSCHI and TRACY TOSCHI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TOSCHI, and TRACY TOSCHI,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN MATEO, DON DALLIMONTI, RHONDA DALLIMONTI, NEIL CULLEN, BRIAN LEE, DAVID WEIDNER, and DOES ONE through FIFTY, inclusive,<br><br>Defendants. | Case No. C-07-3625 MMC<br><br>**PLAINTIFFS MOTION FOR INJUNCTIVE RELIEF AGAINST DEFENDANT COUNTY OF SAN MATEO**<br>[Cal. Code Civ. Proc. § 526]<br><br>Date:  January 4, 2008<br>Time:  9:00 a.m.<br>Place:  Courtroom 7, 19th Floor<br>Judge:  The Honorable Maxine M. Chesney, presiding<br><br>Date Action Filed:  July 13, 2007<br>Trial Date:  **November 3, 2008** |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED [Civil L.R. 7-4(a)(3)] ........................... 2

III. FACTUAL BACKGROUND .......................................................................................... 3

IV.  APPLICABLE LAW ....................................................................................................... 8

V.   LEGAL ANALYSIS ....................................................................................................... 9

    A.   THE ELEMENTS OF THE COUNTY'S LIABILITY FOR INVERSE
        CONDEMNATION ............................................................................................. 9

    B.   CASE LAW SUPPORTS THE ISSUANCE OF A PRELIMINARY
        INJUNCTION ................................................................................................... 10

    C.   THE THREE FACTORS SUPPORTING THE ISSUANCE OF
        INJUNCTIVE RELIEF REQUIRING THE COUNTY TO REMOVE OR
        REPAIR THE ASPHALT SWALE .................................................................. 12

VI.  CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Albers v. County of Los Angeles*, (1965) 62 Cal.2d 250 .................................................................9

*Bauer v. County of Ventura*, 45 Cal.2d 276, 284 (1955) ................................................................9

*Belair v. Riverside County Flood Control Dist.*, (1988) 47 Cal.3d 550 .........................................9

*Frustuck v. City of Fairfax*, (1963) 212 Cal.App.2d 345 ...............................................................9

*Holtz v. Superior Court*, (1970) 3 Cal.3d 296 ................................................................................9

*Marshall v. Department of Water & Power*, 219 Cal.App.3d 1124, (1990) .................................9

*Paterno v. State of California*, 113 Cal.App.4th 998 (2003) ....................................................9, 10

*Sheffet v. County of Los Angeles* 3 Cal.App.3d 720 (1970) ......................................................9, 10

*Souza v. Silver Development Co.*, (1985) 164 Cal.App.3d 165 .....................................................9

*Yue v. City of Auburn*, 3 Cal.App.4th 751 (1992), .......................................................................11

## I. INTRODUCTION

This case began as a dispute between neighbors – plaintiffs Michael and Tracy Toschi ("Plaintiffs") and defendants Don and Rhonda Dallimonti (the "Dallimontis"). Don Dallimonti is a Sergeant in the San Mateo County Sheriff's Department. This fact provides context to the narrow issue raised in Plaintiffs' motion for injunctive relief. What began as an attempt by the Plaintiffs to mitigate damage to their property (caused, at least in part, by the Dallimontis driving their vehicles onto the Toschi's property when entering and exiting the driveway of their residence) escalated into the undisputed facts presented by Plaintiffs in support of this motion.

There exists a "paper trail" between Plaintiffs and Defendant County of San Mateo (the "County") that culminates in the County constructing an asphalt swale along Park Road (in unincorporated Redwood City) on or about December 7, 2006. This newly constructed swale runs parallel to Plaintiffs' property line at the upper portion of a steep hill that is wooded and contains several mature Heritage Oak trees. In a letter dated December 29, 2006, the former Director of Public Works for the County, Neil Cullen, wrote that "the recent paving of the drainage swale was not intended to and will not eliminate the issue of storm water runoff on your property, and the runoff is likely to continue its historic pattern of draining onto your property." (See Exhibit F to Declaration of Michael Toschi in Support of Motion for Injunctive Relief ("Toschi Decl."), ¶ 14.)

The "historic pattern" of storm water runoff along Park Road was directly down the street to a catch basin, not onto Plaintiffs' property. Plaintiffs have presented the declarations of five neighbors (Tom Linebarger, Lilya Vorobey, Age Lyssand, Jack Purcell and Grace Whipps) who all attest to the fact that they are familiar with the portion of Park Road that boarders Plaintiffs' property. All five neighbors attest to the following facts: "Historically rain/ surface water would flow down Park Road, parallel to the Toschi's property, to a catch basin in the road at the corner of Park Road and Woodland Place. Approximately one year ago I noticed that a crude asphalt swale was constructed along the Toschi's property line that was designed to divert water run-off from Park Road onto the Toschi's property rather than continuing down Park Road to a County

catch basin." (See Declarations of Tom Linebarger, Lilya Vorobey, Age Lyssand, Jack Purcell and Grace Whipps in Support of Motion for Injunctive Relief, ¶ 2.)

In addition, Plaintiffs hired a soil engineer in the fall of 2006 to evaluate the damage caused by the storm water runoff. Bruce Matheson, a professional engineer, prepared a written report addressing the harm that will be caused by the asphalt swale. "It is my opinion the newly installed asphalt swale is incomplete and should be extended to the property line to eliminate the gap. If this is not done, it could result in undercutting the roadbed, the loss of more Heritage Oak trees, as well as land sliding on the Toschi property, and present a serious safety hazard to the Toschis and their neighbors." (See Exhibit B to Declaration of Bruce Matheson in Support of Motion for Injunctive Relief, ¶ 3.)

Plaintiffs request that this Court conduct its own site inspection of the property and the asphalt swale constructed by the County in December 2006. (See Plaintiffs' Request for Judicial Notice.) Plaintiffs believe the doctrine of *res ipsa loquitor* is applicable – the recently constructed swale redirecting storm water runoff onto Plaintiffs' property "speaks for itself." Even without a site inspection, the declarations submitted by Plaintiff will demonstrate that (1) Plaintiffs' property continues to be damaged by storm water being redirected on to Plaintiffs' property from the County's swale; (2) the County has prevented Plaintiffs from mitigating this continuing damage by prohibiting Plaintiffs from placing sandbags on their own property; and (3) an immediate injunction directing the County to remove or redesign its swale is the only way to prevent further damage to Plaintiffs' property.

## II.   STATEMENT OF ISSUES TO BE DECIDED [Civil L.R. 7-4(a)(3)]

Did the County's asphalt swale direct storm water runoff onto Plaintiffs' property and thereby damage Plaintiffs' property? If this Court answers this question in the affirmative, then the next issue to be decided is as follows: Should the County remove or redesign its asphalt swale in order to prevent further damage to Plaintiffs' property.

## III. FACTUAL BACKGROUND

Plaintiffs reside at 2511 Park Road, Redwood City, California. They live in an unincorporated area of Redwood City that is within the jurisdiction of the County Sheriff's Office and the County Department of Public Works ("DPW"). Plaintiffs' property has a steep hill that is wooded and includes several mature Heritage Oak trees. The County maintains Park Road that boarders Plaintiffs' property. Historically, the County maintained Park Road to prevent rainwater from draining on to the upper portion of Plaintiffs' property. (See Toschi Declaration, ¶ 1.)

Defendants Don and Rhonda Dallimonti also reside on Park Road and are neighbors of Plaintiffs. Defendants Don Dallimonti and Rhonda Dallimonti often drove their vehicles onto Plaintiffs' property when entering and exiting the driveway of their residence. The driving of vehicles by the Dallimontis damaged Plaintiffs' property by causing subsidence and altering the pattern of storm drainage from Park Road onto Plaintiffs' property, causing substantial erosion to Plaintiffs' property. (See Toschi Declaration, ¶ 2.)

During the spring of 2004, Plaintiffs hired gardeners to repair their damaged property adjacent to Park Road. Plaintiffs intended that the repairs would prevent further erosion on Plaintiffs' property, stabilize the soil and protect the Heritage Oak trees on Plaintiffs' property. (See Toschi Declaration, ¶ 3.)

As the repair work was underway, Defendant Don Dallimonti confronted the gardeners hired by Plaintiffs and threatened them with arrest and/or immigration investigation and deportation if they did not stop working. (See Toschi Declaration, ¶ 4.)

During the spring of 2006, as a result of erosion and subsidence problems on Plaintiffs' property emanating from Park Road, a large Heritage Oak tree on Plaintiffs' property fell, damaging the property of two of Plaintiffs' neighbors, tearing down utility lines, and blocking vehicular traffic on Park Road. (See Toschi Declaration, ¶ 5.)

In July 2006, Plaintiff Michael Toschi met with Mark Marelich, a DPW employee, to discuss creating a berm adjacent to Park Road and on Plaintiffs' property as a remedy to the erosion caused by the water run-off from Park Road onto Plaintiffs' property. Defendant Don

1. Dallimonti interrupted this meeting and demanded that Plaintiff Michael Toschi not create a berm on the property to prevent further erosion. In July 2006 (soon after Defendant Don Dallimonti interrupted the meeting between Plaintiff Michael Toschi and Mark Marelich), Defendant County of San Mateo sent a notice to Plaintiffs demanding that they remove the berm on their property. (See Toschi Declaration, ¶ 6.)

On or about August 10, 2006, Plaintiff Michael Toschi met with Lisa Ekers, the Road Operations Manager of the County Department of Public Works ("DPW"), to discuss a remedy for the erosion on Plaintiffs' property. Lisa Ekers agreed with Plaintiff Michael Toschi's proposed plan to construct a rainwater run-off swale to prevent further erosion to Plaintiffs' property. (See Toschi Declaration, ¶ 7.)

Plaintiff Michael Toschi agreed to submit a permit application to remove the berm, repair erosion, remove a fallen oak tree, and install new plantings. On August 27, 2006, the County issued to Plaintiffs an "Encroachment Permit" dated August 23, 2006 that was valid through September 15, 2006 for Plaintiffs' erosion remediation plans. (See Exhibit A to Toschi Declaration, ¶ 8.)

Beginning on September 5, 2006, Plaintiffs started to do the work of removing the berm, removing the fallen tree and other work identified in the County's August 23, 2006 Encroachment Permit. Plaintiffs, however, did not complete this work by September 15, 2006 due to interruption because of threats from Don Dallimonti. (See Toschi Declaration, ¶ 9.)

On September 26, 2006, Defendant Neil Cullen, Director of the DPW, wrote a letter to Michael Toschi directing him to remove the plants and the berm for allegedly being done in violation of the Encroachment Permit. Plaintiff Michael Toschi responded to Defendant Neil Cullen by letter on September 29, 2006 in which he addressed Defendant Neil Cullen's allegations and explained his efforts to prevent future erosion to his property. *Id.*, ¶ 10.

On October 20, 2006, Defendant Neil Cullen sent a Notice to Remove Encroachment to Plaintiffs. The Notice to Remove Encroachment directed Plaintiffs to remove the berm and plantings that remain in the "right-of-way" on Plaintiffs' property because the Encroachment Permit, which the County issued on August 23, 2006, had expired on September 15, 2006.

(See Toschi Declaration, ¶ 11.)

On November 6, 2006, Plaintiffs met with Lisa Ekers to discuss Plaintiffs' attempt to perform work on their property in accordance with the Encroachment Permit. After inspecting Plaintiffs' property, Lisa Ekers informed Plaintiffs that it appeared that Plaintiffs had complied with the requirements of the Encroachment Permit. Specifically, Lisa Ekers observed that Plaintiffs had removed the berm and planted the English Laurel shrubs as approved by the Encroachment Permit. Lisa Ekers also stated that the County would repair the swale along the edge of Park Road adjacent to Plaintiffs' property to prevent water run-off and further erosion on Plaintiffs' property. (See Toschi Declaration, ¶ 12.)

Plaintiff Michael Toschi confirmed the November 6th meeting with Lisa Ekers in his November 9, 2006 letter to Defendant Neil Cullen. Plaintiff Michael Toschi enclosed with his November 10, 2006 letter the October 30, 2006 report of Bruce Matheson, P.E., President of Foundation Technologies, Inc. Mr. Matheson concluded in his report:

> It is our opinion, based on our visual observations, that it would be imprudent to remove the swale and berm constructed by you, unless the County is prepared to construct a more permanent asphalt or concrete lined swale. Removal of the existing [swale and berm] could, and probably would, create further instability on the upper slope of your property. This could result in undercutting of the roadbed, the loss of more Heritage oak trees, as well as landsliding on your property, and present a serious safety hazard to you and your neighbor.

(See Exhibit E to Toschi Declaration, ¶ 13; see also Exhibit A to Declaration of Bruce Matheson in Support of Motion for Injunctive Relief, ¶ 1.)

On November 15, 2006, Defendant Neil Cullen sent a letter to Plaintiff Michael Toschi claiming that he had not complied with the conditions of the County permit and that the "Notice to Remove Encroachment" remains in effect. (See Exhibit F to Toschi Declaration, ¶ 14.)

On or about December 7, 2006, employees of the County entered onto Plaintiffs' property and among other things: (1) removed all 12 of the English Laurel shrubs that Plaintiffs planted on their property pursuant to the Encroachment Permit; (2) cut trees and greenery (which exposed the claimants' house to viewing from the home of Don Dallimonti and Rhonda

Dallimonti) on Plaintiffs' property; and (3) constructed and paved a crude asphalt swale along Plaintiffs' property line along Park Road, intentionally designed to direct water run-off from Park Road onto Plaintiffs' property rather than continuing down Park Road to a County catch basin. Swale construction was significantly poorer in quality, compared to similar swales along neighborhood streets. (See Toschi Declaration, ¶ 15.)

On several occasions since December 7, 2006, Plaintiffs placed sandbags on their property to divert water run-off away from Plaintiffs' property. On each occasion that Plaintiffs placed sandbags on their property, employees of the County removed the sand bags, apparently after the Dallimontis called the County. (See Toschi Declaration, ¶ 16.)

On December 16, 2006, Plaintiff Michael Toschi called the DPW and requested that it not remove sandbags placed by Plaintiffs near the asphalt swale recently constructed by the County. County employee Steve Ballisteri told Michael Toschi that he had been instructed not to respond to emergency calls at Plaintiffs' property due to "some lawsuit." (See Toschi Declaration, ¶ 17.)

On December 13, 2006, Plaintiffs' engineer Bruce Matheson did a second site inspection of Plaintiffs' property. In a report dated December 14, 2006, Mr. Matheson concluded: "It is our opinion, based on our most recent observations, that the newly installed asphalt swale is incomplete and should be extended to the property line to eliminate the gap. If this is not done, it could result in undercutting of the roadbed, the loss of more Heritage Oak trees, as well as landsliding on your property, and present a serious safety hazard to you and your neighbor." (See Exhibit G to Toschi Declaration, ¶¶ 18 and 19; see also Exhibit B to Declaration of Bruce Matheson in Support of Motion for Injunctive Relief, ¶ 3.)

On December 19, 2006, Plaintiffs sent another letter to Defendant Neil Cullen in which they expressed their concerns about the hazard "that is potentially life threatening to our neighbor" created by the recently constructed swale. Plaintiffs' enclosed with their December 19, 2006 letter a copy of Mr. Matheson's December 14, 2006 report. (See Exhibit G to Toschi Declaration, ¶ 19.

On December 29, 2006, Defendant Neil Cullen wrote a letter to Plaintiff Michael Toschi in which he stated in pertinent part: *"[T]he recent paving of the drainage swale was not intended to and will not eliminate the issue of storm water runoff on your property, and the runoff is likely to continue its historic pattern of draining onto your property."* Defendant Neil Cullen stated that the County continues to "maintain the drainage paths as they existed prior to the encroachments" and that Plaintiffs must apply for and receive a permit prior to performing any further work intended to remedy the hazardous condition on Plaintiffs' property. (See Exhibit H to Toschi Declaration, ¶ 20; italics added.)

On January 8, 2007, Michael Toschi wrote a letter to Defendant Cullen in which he stated in pertinent part: *"I have owned the home at 2511 Park Road since 1991. Since then, including periods of historically heavy rainfall, runoff has never drained onto my property in the manner characterized in your letter. Several of my neighbors will attest to this fact...."* (See Exhibit I to Toschi Declaration, ¶ 21; italics added.)

On February 1, 2007, Defendant Brian Lee, Acting Director of the DPW, replacing retired Neil Cullen, responded to Plaintiff Michael Toschi's January 8, 2007 letter in which he stated in pertinent part: "The placement of berms along the roadway, sandbags in the drainage swale, or any other measures or devices that may result in diverting storm water runoff into the public right-of-way or onto any private properties downhill from you is not allowed without first performing a drainage analysis and obtaining an encroachment permit." (See Exhibit J to Toschi Declaration, ¶ 22.)

Plaintiffs recently had an arborist inspect the trees on their property. They are concerned about three large Oak trees because another large Oak tree on the Plaintiffs' property fell in the spring of 2006 because of erosion and subsidence problems. (See Exhibit K to Toschi Declaration, ¶ 23.)

Michael Toschi took photographs of the area before and after the County removed 12 English Laurel shrubs, cut trees and greenery, and constructed and paved a crude asphalt swale along his property line directing run-off onto his property instead of continuing down Park Road to a catch basin. (See Exhibits L and M to Toschi Declaration, ¶ 24.) A visual inspection of the

site would give a much better appreciation and understanding of how the County has redirected and diverted storm water runoff onto Plaintiffs' property. (See Toschi Declaration, ¶ 24.)

Plaintiffs' property is in a dangerous condition as a result of the Defendants' acts and omissions. If this condition is not immediately remedied it is likely that irreparable harm will occur to Plaintiffs' property and to their neighbors' property as well as threaten lives. (See Toschi Declaration, ¶ 25.)

## IV. APPLICABLE LAW

California Code of Civil Procedure Section 525 provides as follows: "An injunction is a writ or order requiring a person to refrain from a particular act. It may be granted by the court in which the action is brought, or by a judge thereof; and when granted by a judge, it may be enforced as an order of the court."

California Code of Civil Procedure Section 526(a) provides an injunction may be granted in the following cases, among others:

> (1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
>
> (2) When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action;
>
> (3) When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual;
>
> (4) When pecuniary compensation would not afford adequate relief; and
>
> (5) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.

In this case the County's liability for inverse condemnation is predicated on article I, section 19 of the California Constitution. Upon a showing of physical damage to real property proximately caused by the operation of a public improvement, a public entity is strictly liable in inverse condemnation for the damage caused by the improvement – i.e., liability in inverse does

not depend upon a showing of fault or of foreseeability of the harm inflicted. *Albers v. County of Los Angeles*, 62 Cal.2d 250, 257 (1965). Further, injunctions, both mandatory and prohibitory, may issue in cases where the plaintiffs property has been damaged by a public entity's drainage of surface waters. *Sheffet v. County of Los Angeles*, 3 Cal.App.3d 720, 735-742 (1970).

## V. LEGAL ANALYSIS

### A. The Elements of the County's Liability for Inverse Condemnation

Plaintiffs' Complaint alleges an Eleventh Claim for Relief against the County for inverse condemnation as a result of the County's construction of a swale that directs storm runoff water on to Plaintiffs' property. Under strict liability inverse, a public entity is liable, without any showing of fault on the County's part or foreseeability of harm, if Plaintiffs can establish that their property is being damaged by the operation of a "public work." *See Albers v. County of Los Angeles*, 62 Cal.2d 250, 261-262 (1965); *Belair v. Riverside County Flood Control Dist.*, 47 Cal.3d 550, 562-563 (1988); *Marshall v. Department of Water & Power*, 219 Cal.App.3d 1124, (1990); *Souza v. Silver Development Co.*, 164 Cal.App.3d 165, 170 (1985). "Whether or not the public improvement involved was made with care and skill is irrelevant. [Citations.] The public should pay the costs inherent in public works, including damages, foreseeable or not. [Citations.]" *Paterno v. State of California*, 113 Cal.App.4th 998, 1015 (2003). Any storm drainage system is by definition a "public work." *See Bauer v. County of Ventura*, 45 Cal.2d 276, 284 (1955); *Souza*, supra, 164 Cal.App.3d at p. 170; *Frustuck v. City of Fairfax*, 212 Cal.App.2d 345, 358 (1963).

The logical basis for strict liability in inverse condemnation actions is the same public policy that underlies the constitutional requirement for just compensation in a direct condemnation (eminent domain) proceeding: the government must compensate private property owners whose property is taken or damaged by a public work whenever "the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking." *Albers*, 62 Cal. 2d at p. 262 [internal quotation marks and citation omitted]; *see also Holtz v. Superior Court*, (1970) 3 Cal.3d 296, 303 ["the underlying purpose of our constitutional provision in inverse . . . condemnation is to distribute throughout the community

the loss inflicted upon the individual"] [internal quotation marks and citation omitted], 310-311 [holding that, since the undertaking at a lower cost created some risk of damage to private property, it was proper to require the public to bear the loss]; *Paterno v. State*, 113 Cal.App.4th 998, 1015 (2003).

### B. Case Law Supports the Issuance of a Preliminary Injunction

The applicable law is set out in considerable detail in *Sheffet v. County of Los Angeles*, 3 Cal.App.3d 720 (1970). In that case, the court granted an injunction against a private property owner, and the County of Los Angeles, to prevent the draining of surface waters in excess of the defendants' prescriptive rights onto the plaintiff's land and into a drainage ditch on the plaintiff's property. In *Sheffet*, a private developer built an approved subdivision, including streets that were dedicated as public highways and accepted by the County. As one result of the construction, the flow of rainfall runoff was directed onto the plaintiff's property.

The *Sheffet* court stated:

> California courts follow a modified rule of civil law in determining the rights and liabilities of adjoining landowners with respect to the flow of surface waters. (Footnote omitted.) As stated in *Keys v. Romley* (1966) 64 Cal.2d 396, 409: 'No party, whether an upper or a lower landowner, may act arbitrarily and unreasonably in his relations with other landowners and still be immunized from all liability. ( ) It is therefore incumbent upon every person to take reasonable care in using his property to avoid injury to adjacent property through the flow of surface waters. Failure to exercise reasonable care may result in liability by an upper to a lower landowner. It is equally the duty of any person threatened with injury to his property by the flow of surface waters to take reasonable precautions to avoid or reduce any actual or potential injury.'

*Sheffet* at 727-728. In this case, the County has not only altered the natural flow of surface water, it has prevented Plaintiffs from taking corrective action to mitigate the ongoing injury. (See Toschi Declaration, ¶ 16.)

The *Sheffet* court went on to discuss available remedies. Regarding the propriety of an injunction against a public entity, the *Sheffet* court stated:

> There have been cases wherein injunctions, both mandatory and prohibitory, have issued. One such case (*Robinson v. County of San Diego* (1931) 115 Cal.App. 153) compelled a public entity to alter street improvements which occasioned the flooding of a plaintiff's land. There, the County caused a highway to be graded and lowered and ditches to be constructed on both sides thereof so that surface waters were diverted, thus

> causing them to flow onto plaintiff's property. **The court perpetually enjoined the County from so diverting the waters that had not previously flowed upon plaintiff's property....** In *Los Angeles Brick & Clay Products Co. v. City of Los Angeles* (1942) 60 Cal.App.2d 478, and the case it relied upon, *Farrell v. City of Ontario* (1918) 36 Cal.App. 754, mandatory injunctions were issued. The injunctive relief cases such as *Robinson*, *Farrell*, and *Los Angeles Brick* treat the diversion of surface waters as a nuisance, and not as a necessary consequence of the public improvement. While it is true that the surface water diversion may not be a part of the public improvement, nevertheless the resultant run-off and diversion, where intended, is caused by the improvement. Where the public use of the improvement obtains, the damages which also result and which are attached thereto are within the authority of the agency causing the improvement, to the same extent as is the improvement itself. (*Granone v. County of Los Angeles* [(1965) 231 Cal.App.2d 629] at p. 646. In cases such as the one before us, neither the consequentially injured party nor the courts may superimpose corrective authority upon public works already created **unless they are negligently constructed, or constructed in a manner unnecessary to the public improvement.** Distinct from those already created are those not yet existent, for then the relative merits of injury may be weighed against the benefits to the public. As we have pointed out, the use of the ditch, by the increase of its burden, did not cause a different injury, though it may well have constituted a diminution in property value for which plaintiff may recover. This portion of the improvement was designed to accomplish the very result of which plaintiff complains. **The over-crown run-off, however, is but the result of negligent design of the crown height or road pitch, and has no relationship to the reasonableness of the public improvement sought to be created. As to such unnecessary, unintentional, and negligently created consequences of the public improvement, we see neither logic nor reason which prohibits the issuance of an injunction to prohibit the maintenance thereof.**

*Sheffet* at 737-738; bold added.

This case is closely analogous to *Sheffet*. Here, the County has constructed a new asphalt swale designed in such a way as to divert storm water runoff onto Plaintiff's property, rather than to the existing catch basin down the street.

California courts have followed *Sheffet* in other cases involving surface water damage to private property. For example, in *Yue v. City of Auburn*, 3 Cal.App.4th 751 (1992), the plaintiff, owner of a restaurant in the old city portion of Auburn, was damaged by flooding and excessive water caused by a poorly engineered drainage system. The City of Auburn had approved a development built above plaintiff's property. The City failed to require the developer to mitigate storm water runoff and the City failed to upgrade its drainage facilities to accommodate the increased flow of water. As a result of increased storm water runoff, the plaintiff's land was repeatedly inundated with water. The *Yue* court determined that the plaintiff could state a cause

of action for inverse condemnation by alleging that the City of Auburn "had a duty to prevent harm to plaintiffs' land caused by conditions defendant approved or created." *Yue* at 763.

Here, the County constructed a crude asphalt swale in December 2006, after removing a berm and improvements the plaintiffs made on their property to mitigate the storm water runoff caused by their neighbors driving habits. (See Toschi Decl., ¶¶ 2 and 15.) The newly constructed swale redirected surface water, which historically had run down the side of the road to a catch basin, onto Plaintiffs' property. (See Exhibit I to Toschi Decl.; Declarations of Tom Linebarger, Lilya Vorobey, Age Lyssand, Jack Purcell and Grace Whipps in Support of Motion for Injunctive Relief, ¶ 2.) This has caused serious erosion and has significantly increased the risk that a large Heritage Oak tree will fall and cause damage to an elderly neighbor and her home. (See Exhibit B to Matheson Decl.)

California law holds that the County is liable for additional runoff directed onto Plaintiff's property by the construction of a swale. The continuing damage to Plaintiffs' property will be remedied by an injunction requiring the County to remove or redesign its swale. The threat of injury is imminent, yet the County has prevented Plaintiffs from protecting their own property by placing sandbags on their property. (See Toschi Decl., ¶ 16.) Therefore, an immediate injunction directing the County to remove or redesign its swale is the only way to prevent further damage to Plaintiffs' property.

C. **The Three Factors Supporting The Issuance Of Injunctive Relief Requiring The County To Remove Or Repair The Asphalt Swale**

Plaintiffs' right to injunctive relief requiring the County to remove or repair the asphalt swale rests on three undisputed facts:

1. The County's newly constructed swale (December 7, 2006) redirected surface water, which historically had run down the side of the road to a catch basin, onto Plaintiffs' property. (See Exhibit I to Toschi Decl.; Declarations of Tom Linebarger, Lilya Vorobey, Age Lyssand, Jack Purcell and Grace Whipps in Support of Motion for Injunctive Relief, ¶ 2.)

2. On several occasions since December 7, 2006, Plaintiffs placed sandbags on their property to divert water run-off away from Plaintiffs' property. On each occasion that Plaintiffs

placed sandbags on their property, employees of the County removed the sand bags, apparently after the Dallimontis called the County. (See Toschi Declaration, ¶ 16.) Therefore, Plaintiffs have no ability to mitigate their ongoing damages between now and the November 3, 2008 trial date.

3. The continued presence of the County's asphalt swale is causing irreparable harm to Plaintiffs' property and the property of Plaintiffs' neighbors. (See Toschi Declaration, ¶ 25.) Further, according to Plaintiffs' soils engineer, who inspected the County's asphalt swale and Plaintiffs' property on December 13, 2006: "It is my opinion the newly installed asphalt swale is incomplete and should be extended to the property line to eliminate the gap. If this is not done, it could result in undercutting the roadbed, the loss of more Heritage Oak trees, as well as land sliding on the Toschi property, and present a serious safety hazard to the Toschis and their neighbors." (See Exhibit B to Declaration of Bruce Matheson in Support of Motion for Injunctive Relief, ¶ 3).

In sum, the County redirected storm water runoff onto Plaintiff's property by constructing an asphalt swale, prevented Plaintiffs' from mitigating the damage caused by the storm water runoff and is causing ongoing property damage and a threat to the safety of Plaintiffs and their neighbors. As such, Plaintiffs have satisfied the requirements for the issuance of the requested injunctive relief.

## VI. CONCLUSION

For the reasons stated in greater detail above, Plaintiffs request that this Court issue an immediate injunction directing the County to remove or redesign its swale in order to prevent further damage to Plaintiffs' property.

Dated: November 30, 2007

MOSLEY & GEARINGER LLP

By: _____/s/ Brian Gearinger_____
BRIAN GEARINGER
Attorneys for Plaintiffs MICHAEL TOSCHI and TRACY TOSCHI