MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
By: V. Raymond Swope III, Deputy (SBN 135909)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA  94063
Telephone: (650) 363-4759
Facsimile:  (650) 363-4034
E-mail:  rswope@co.sanmateo.ca.us

Attorneys for Defendants
COUNTY OF SAN MATEO, NEIL CULLEN,
BRIAN LEE and DAVID WEIDNER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TOSCHI, AND TRACY TOSCHI,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN MATEO, DON DALLIMONTI, RHONDA DALLIMONTI, NEIL CULLEN, BRIAN LEE, DAVID WEIDNER, and DOES ONE through FIFTY, inclusive,<br><br>Defendants. | Case No. C-07-3625 MMC<br><br>**DEFENDANTS COUNTY OF SAN MATEO, NEIL CULLEN, BRIAN LEE AND DAVID WEIDNER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**<br><br>Date: January 4, 2008<br>Time: 9:00 a.m.<br>Dept.: Courtroom 7, 19th Floor |

**I.   STATEMENT OF FACTS**

This matter is a civil rights action for alleged conspiracy to retaliate, deprivation of liberty and a claim for inverse condemnation arising from a neighborhood dispute over the construction of a drainage berm by plaintiffs, and the removal of the berm by the San Mateo County Department of Public Works.

Emerald Lake Hills, the unincorporated region of the County, has very hilly terrain. Defendants Don and Rhonda Dallimonti reside at 606 Park Road, approximately sixty to eighty feet upslope from plaintiffs' residence. Plaintiffs Michael and Tracy Toschi live across and on the opposite side of Park Road, north and downslope from the Dallimonti residence. (See Color Topographical map titled "Emerald Lake Hills Area of Park Road and Woodland Place," a true and correct copy of which is attached to Declaration of Mark Marelich as Exhibit "A.") Based upon the elevations, plaintiffs reside in a very low-lying gully, which lends itself to the possibility of flooding with torrential rains. The Toschis'

property receives stormwater runoff on its northerly, westerly and southerly sides, and discharges it to the neighboring property to its easterly side.

Historically, the excess rainwater/stormwater runoff flows downhill from the peak of the hill beyond (farther south of) the Dallimonti residence, and flows across plaintiffs' property. (Marelich Decl., Ex. "A.") In addition, stormwater collects on both sides of Park Road, and drains into a catch basin at the southerly side of the intersection of Park Road and Woodland Place, and a small inlet at the northerly side of the intersection of Park Road and Woodland Place near 603 Park Road. (Marelich Decl.)

Sometime in the mid-1990s, Plaintiffs filled and landscaped a dry creek bed traversing the center of their property and downslope from Park Road and the Dallimontis. A rock lined ditch and pipe inlet was constructed at one end of the property along the creek site. This work was done without a permit. I believe that the installation of the pipe, and the landscaping over the pipe on this dry creek bed could possibly interfere with this natural watercourse by constricting storm water runoff, and may cause flooding in the areas as water flows down hill to 2511 Park Road. Plaintiffs' property includes the low-lying portion of the valley and will collect water. Any mitigation which directs water from the public right-of-way away from his property will likely reduce the roadway drainage onto his lot. However, directing the water away from plaintiffs' property will subject neighboring property owners to heavy storm water runoff, overburden the inlet at the bottom of the hill at Park and Woodland Place, and cause flooding of neighboring properties. (See Marelich Decl., para 5 and Decl. of Roger G. Fry, para 10 and Decl. of R. Rexford Upp, para 8.)

6.    Unlike some incorporated cities with municipal storm drain systems or drainage districts, with similar improved drainage facilities, the County does not have such a system in the Emerald Hills region. The County's function in unincorporated areas is merely to facilitate the flow of water along natural drainage courses and to facilitate drainage of storm water runoff off of or across County maintained roadways. When the Department of Public Works addresses surface water drainage issues, it must consider the interests of the general public, including all the neighboring properties, not just one individual property owner.

7.    In 2006, Plaintiffs approached the Department of Public Works to inquire about permits to install drainage works along Park Road in the area upslope and adjacent to the rear of plaintiffs' property to serve their property. The proposed work was allegedly intended to mitigate damage to the slope area adjacent to 607 Park Road caused by a fallen oak tree. I met with plaintiff at the subject location on April 27, 2006. Plaintiff agreed during that meeting to install storm drainage facilities to convey runoff from Park Road down the slope to the creek on his property. Having inspected this area and the tree after it fell, it is my opinion that the tree died because ivy around the entire tree choked off the oxygen to the

1   tree, placing it in distress.  In addition, Mr. Marelich believes it is possible that the distressed tree may
2   have allowed fungus and insect infestation, contributing to its death and collapse. (See Marelich
3   Declaration, para. 7.)  R. Rexford Upp, Ph.D., defendant County's soils engineering and geotechnical
4   consultant, has opined that the Heritage Oak tree that was lost was not likely lost due to the flow of
5   surface water down the slope toward Mr. Toschi's property. Surface water on a steep slope is going to
6   run <u>over</u> the ground and <u>not</u> pond to saturate the ground as Mr. Matheson has suggested. The five foot
7   gap is also accelerating the flow of water down the slope because of the removal of the tree and
8   placement of the loose soil currently present.

9         8.      On or about June 30, 2006, Plaintiffs Michael and Tracy Toschi constructed a large dirt
10  and concrete berm on the north side of Park Road along the Toschi property, allegedly intended to
11  prevent soil erosion from rainfall runoff. The berm was constructed by plaintiffs within a county right-of-
12  way without a permit. A complaint by the uphill neighbors called our attention to the existence of the
13  non-permitted berm within the county right-of-way. Later, on behalf of the Department of Public Works,
14  I prepared and posted a Notice to Remove Encroachment on the front door of plaintiffs' residence on
15  July 5, 2006. (A true and correct copy of the Notice to Remove Encroachment is attached hereto and
16  incorporated herein by reference as Exhibit B.) In spite of our posting, the Toschis ignored the notice,
17  and did not remove the berm.

18        9.      On August 23, 2006, the San Mateo County Department of Public Works ("DPW") issued
19  an encroachment permit to plaintiffs for the removal of a dead and fallen oak tree, filling of the hole from
20  where the tree was removed, removal of the soil and concrete berm, and planting of bushes. (A true and
21  correct copy of the Encroachment Permit is attached hereto and incorporated herein by reference as
22  Exhibit C.) The permit expired on September 15, 2006. On or about September 24, 2006, plaintiffs began
23  planting bushes on top of the existing dirt berm. Toschi was working on an expired permit, and no
24  extension of this permit was ever granted by the county.

25        10.     In a letter dated October 9. 2006, plaintiff Michael Toschi declared that he "removed the
26  berm and concrete pieces, as well as planted the English Laurel shrubs accurately as stated in the permit .
27  . . ." (A true and correct copy of the letter dated October 9, 2006, is attached hereto and incorporated
28  herein by reference as Exhibit D.) Having inspected this area later, it was clear to me that the berm had

1 not been removed, and that plaintiffs had planted the shrubs on top of the berm.

2   11.   On October 24, 2006, a Notice to Remove Encroachment dated October 20, 2006 was served on plaintiffs, which required the removal of the concrete and dirt berm and plantings from the county right-of-way. The notice stated that the concrete and dirt berm was placed "without permit; and landscaping planted after expiration of the permit and planted beyond the limits allowed by the permit." (A true and correct copy of the Notice dated October 20, 2006 is attached hereto and incorporated herein by reference as Exhibit E.) The Notice to Remove Encroachment also advised plaintiffs that the County would pursue the recovery of all costs associated with the removal of the encroaching berm, and penalties of $350.00 each day the encroachment remained in place.

   12.   I have reviewed the Declaration of Bruce Matheson, P.E. In Support of Plaintiffs' Motion for Injunctive Relief. Specifically, Mr. Matheson states that "[w]hen I inspected this site in October 2006, the area along the side of the road was maintained so that runoff would continue further down the street where it could discharge into an existing County maintained covert [sic]." Mr. Matheson appears to be referring to the non-permitted berm constructed by the plaintiffs along side the road. The subject area was not maintained in such a manner by the County Department of Public Works. The subject area was maintained by the County Department of Public Works to facilitate drainage along its historic pathways, which might include small quantities of runoff toward the drainage inlet on the northerly side of the intersection of Park Road and Woodland Place, but did not historically contain runoff from large storm events.

   13.   On December 4, 2006, the County Department of Public Works removed the plants and the soil and concrete berm from the public right-of-way adjacent to plaintiffs' parcel, backfilled the planting holes, and placed asphalt concrete pavement in the drainage swale which appears to be the subject of the plaintiffs' motion. The newly paved asphalt swale ended approximately four feet from the edge of plaintiffs' property line and that of 607 Park Road. This gap was left in order not to alter the historic flow of surface water downhill to plaintiffs' property. This condition (the gap or washed-out area) has existed for at least the last fifteen years I have worked in this area, and likely existed long before plaintiffs purchased the property. The new asphalt swale was constructed to replicate the condition that existed prior to plaintiffs' construction of the non-permitted berm.

1    14.    When the swale was paved, Public Works also advised plaintiffs that the drainage swale would not eliminate the storm water runoff onto plaintiffs' property, and further advised that the runoff would likely continue its historic drainage pattern. Based upon my experience, the historic drainage pattern includes the drainage of surface water across Park Road, down the slope to plaintiffs' creek bed, which has been landscaped and altered without a permit from the county.

On December 4, 2006, the County Department of Public Works removed the plants and the soil and concrete berm from the public right-of-way adjacent to plaintiffs' parcel, backfilled the planting holes, and placed asphalt concrete pavement in the drainage swale. The County advised that the drainage swale would not eliminate the storm water runoff onto plaintiffs' property, and further stated that the runoff would likely continue its historic drainage pattern. Removal costs and penalties against plaintiffs totaled $15,853.24, including 40 days at $350.00 per day. Plaintiffs disagreed with these facts. Plaintiffs allege that they are compelled to protect their property against further erosion damage and, as such, have filed the instant action. (See Declaration of James Porter.)

**II.    LEGAL ARGUMENT**

**A.    Applicable Law**

It is not clear what form of injunctive relief is being sought by Plaintiffs. However, given that Plaintiffs' motion does not contemplate a full adjudication of the merits of the dispute, only a preliminary injunction can issue. Further, given that Plaintiffs' are requesting this Court to order Defendants to take affirmative steps, it is a mandatory preliminary injunction. Notwithstanding standing Plaintiffs' misplaced reliance on California Code of Civil Procedure § 526, this Court is bound by Federal Rule of Procedure 65 and Ninth Circuit precedent for the granting of preliminary injunctions.

In the Ninth Circuit, "[t]he standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties. We have two different criteria for determining whether preliminary injunctive relief is warranted. Under the traditional criteria, a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to[the] plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases) We also use an alternative test whereby a court may grant the injunction if the plaintiff demonstrates either: (1) a combination of probable success on the

merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in his favor." Raich v. Gonzales, 500 F.3d 850, 857-58 (9th Cir. 2007)(internal citations and quotations omitted).

Given that Plaintiffs seek a mandatory preliminary injunction, the burden to show their entitlement to an injunction is even greater. See, e.g., Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir.1993)(" '[M]andatory preliminary relief' is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party.") (internal citation omitted).

Plaintiffs's request for a mandatory preliminary injunction cannot withstand the heightened scrutiny required for such a drastic remedy. In addition, they have utterly failed to demonstrate that the facts and law clearly favor them. The crux of this dispute is whether Defendants have taken action that has placed an increased burden on Plaintiffs' property and whether such action was/is reasonable. Given that there is a factual dispute, which actually tips towards Defendants, it is impossible for Plaintiffs to claim that the facts clearly favor them.

**B.    Plaintiffs are not likely to succeed on the merits.**

The Plaintiffs are not likely to succeed on the merits of their inverse condemnation claim. Under California law, the question is whether the County, by virtue of it construction of the swale, has placed an increased burden on Plaintiffs' property such that it amounts to a taking. Sheffet v. County of Los Angeles, (1970) 3 Cal.App.3d 720, 731-32. In Sheffet v. County of Los Angeles, (1970) 3 Cal.App.3d 720, the Second Appellate District considered, in the context of an inverse condemnation suit, whether to grant an injunction against a public entity in favor of a private landowner.

In Sheffet, the plaintiff owned property that began to be subject to rain-related flooding after the development of a new subdivision uphill of his property. The subdivision had been approved by the County. The plaintiff had a drainage ditch on his property which, as a result of the increased runoff, was now filling up with mud mud and water. The Court found that the County's "increased use of plaintiff's ditch, as a result of the improvement, is in the nature of inverse condemnation the County is not, as a matter of law, prohibited from increasing a servitude if such increase is without unreasonable damage to the owner of the servient estate and compensation for any diminution in the property's value is paid by the County." Sheffet at 731-32 (emphasis added). In other words, a plaintiff will succeed in inverse

condemnation <u>only if</u> he can prove that the public improvement increased the burden, in the present case more flooding of water, on his property.

Upon the adjudication of the merits in this case, it will become clear that the swale merely restored the natural conditions that have historically existed adjacent to Plaintiff's property and reversed the alteration caused by Plaintiffs' illegal berm. On these facts, Plaintiffs cannot succeed.

### C. There is no irreparable injury

As discussed in <u>Sheffet</u>, there is a remedy for harm caused by public improvements such as the swale at issue here and that is damages, not injunctive relief. Applying the rationale of <u>Sheffet</u> to the present case, an injunction would not be appropriate. Plaintiffs should have acted prior to the County's building the swale. Moreover, there is no increased burden: the swale simply restores the conditions that existed prior to Plaintiffs' construction of the illegal berm which diverted the natural flow of water away from their property. Given the public benefit of the swale, e.g. restoring the natural flow of rain runoff in the affected community and prevention of flooding of the street, a public injunction cannot be granted unless there is no other remedy. <u>Sheffet</u> at 737-38. Clearly, in the present case, there is another remedy: a suit for inverse condemnation to recover damages. Moreover, "neither the consequentially injured party nor the courts may superimpose corrective authority upon public works already created unless they are negligently constructed, or constructed in a manner unnecessary to the public improvement." <u>Id</u> at 738. The swale paved by the County is clearly necessary to not only restore the natural conditions that existed prior to Plaintiffs' construction of his illegal berm but also to prevent flooding of the roads in the community.

In considering the propriety of an injunction against the defendant county to stop the flooding, the Court wrote that "an injunction will not lie where the damage to plaintiff is not unreasonable under the propriety of the improvement." <u>Sheffet</u> at 736. The Court went on to state that if the "plaintiff acted prior to the construction of the [public improvements], an injunction might well have been the proper remedy to limit the burden on the ditch to preexistent prescriptive rights. But he cannot now require the County to undo that which has been accomplished and which does not create an unreasonable increase in the burden which the land already bore." <u>Id</u>.

Clearly, any alleged injury suffered by Plaintiffs can be repaired. Common sense would dictate

that any damage caused by fallen trees or a little bit too much water can be remedied. This assuming, of course, that plaintiffs are correct that surface water action caused the tree to fall. Defendant County disputes this, based upon the opinions of the County's soils engineering expert. Notably, Plaintiffs have not claimed that any of the damage suffered thus far is irreparable.

### D. Plaintiffs have made no showing regarding the balance of hardships

Plaintiffs have also failed to show that the balance of hardships do not favor them. In fact, Plaintiffs have not even argued that there are any present hardships.

### E. Defendant County Of San Mateo has no duty to prevent surface waters from naturally draining onto Plaintiffs' property, and there is no cause for inverse condemnation in this case, as the County's actions have been reasonable.

Generally, a public agency has no duty to provide protection from flood waters. (Stone v. Los Angeles County Flood Control District (1947) 81 Cal.App.2d 902, 912). Where there is no flood control system, a public entity has no obligation to construct one. Likewise, with regard to surface waters, the owner of a lower parcel of land is required to accept natural drainage from an upper parcel. (See Locklin City of Lafayette (1994) 7 Cal.4th 327, 348-349). If the upper property owner fails to act with <u>reasonable</u> care in changing a drainage pattern, and the lower property suffers damages as a result, the upper owner is liable, except for that which could have been minimized by the lower property owner taking reasonable precautions to reduce the damage. (Locklin v. City of Lafayette (1994) 7 Cal.4th at 349.)

It has been held that a public landowner who diverts surface waters into a national watercourse may be liable to the lower property owner only if the public landowner's conduct is <u>unreasonable</u>. (Locklin supra, 7 Cal.4th 327,367.) In an action against a public entity for inverse condemnation involving surface water runoff, the rule of strict liability does not apply. The determinative test for an inverse condemnation action is reasonableness.

In the present case, the County removed the berm constructed by plaintiffs because it posed an unreasonable risk of harm to neighboring property owners. The inherent risk in allowing the berm to obstruct the natural drainage down plaintiffs' downhill slope is the overburdening of the inlet at the end of Park Road and Woodland Place. (See Marelich Decl. and Declarations of Rexford Upp and Roger Fry.)  The County of San Mateo must consider the topography and the terrain of the area of the

neighborhood in determining the management of drainage swales and other facilities.

Here, plaintiffs' narrow view of their current drainage condition (a condition which long pre-existed plaintiffs' purchase of the property), and their purported remedies for their current drainage condition, are very unsophisticated, and do not take into account the impact of their remedy upon the rest of the neighborhood. As previously stated, unlike some incorporated cities with municipal storm drain systems or drainage districts, with similar improved drainage facilities, the County does not have such a system in the Emerald Hills region. The County's function in unincorporated areas is merely to facilitate the flow of water along natural drainage courses and to facilitate drainage of storm water runoff off of or across County maintained roadways. Again, before any drainage course is altered within a region with a hilly topography such as that in the Emerald Hills region, the County Department of Public Works must consider the impact of such an alteration or remedy upon the public - all neighboring residences within the region. A single remedial alteration for one property owner may negatively affect other landowners downhill.

The "recently constructed" and "newly installed" asphalt swale referred to in Mr. Matheson's declaration actually was simply new asphalt placed over the existing shallow swale by County Maintenance. It is clear that the County's actions, considering the effect upon the neighboring landowners and the pre-existing water flow conditions, were reasonable under the circumstances.

In the present case, the surface waters historically and naturally flow down the slope to plaintiffs' creek bed, a natural watercourse. As such, it was reasonable for the County to pave the drainage swale alongside Park Road to permit the surface waters to follow their natural course down to the creek bed spanning plaintiffs' lot. Because the County has considered the topography and the effect of various drainage remedies upon neighboring homes, the County's conduct was reasonable under the circumstances. As such, the County is not liable to plaintiffs under a cause of action for inverse condemnation, or under any other theory of recovery.

## III.    CONCLUSION

Plaintiffs have failed to satisfy any of the criteria for injunctive relief. They have made no showing of irreparable injury, nor have they that the balance of hardships do not favor them. In fact, plaintiffs have not even argued that there are any present hardships. Further, plaintiffs are not likely to

succeed on the merits, as they cannot successfully pursue an action for inverse condemnation because of the reasonableness of the County's actions. Because it was reasonable for the County to consider the effect of surface water flow on the entire neighborhood in its decision to allow the natural drainage patterns to be followed, Defendant County of San Mateo respectfully asks this court to deny plaintiffs' motion in its entirety.

Dated:  December 14, 2007

Respectfully submitted,

MICHAEL P. MURPHY, COUNTY COUNSEL


By: _____/s/_____
       V. Raymond Swope III, Deputy

Attorneys for Defendants
COUNTY OF SAN MATEO, NEIL CULLEN, BRIAN LEE and DAVID WEIDNER