MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
By: V. Raymond Swope III, Deputy (SBN 135909)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
Telephone: (650) 363-4759
Facsimile: (650) 363-4034
E-mail: rswope@co.sanmateo.ca.us

Attorneys for Defendants
COUNTY OF SAN MATEO, NEIL CULLEN,
BRIAN LEE, and DAVID WEIDNER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TOSCHI, AND TRACY TOSCHI<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN MATEO, DON DALLIMONTI, RHONDA DALLIMONTI, NEIL CULLEN, BRIAN LEE, DAVID WEIDNER, and DOES ONE through FIFTY, inclusive<br><br>Defendants. | Case No. C-07-3625 MMC<br><br>**DECLARATION OF R. REXFORD UPP IN SUPPORT OF COUNTY OF SAN MATEO'S OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**<br><br>Date: January 4, 2007<br>Time: 9:00 a.m.<br>Place: Courtroom 7, 19th Floor |

I, R. Rexford Upp, Ph.D., declare as follows:

1. I am a Certified Engineering Geologist, certified Hydrogeologist, and a Registered Soils Engineer. I have personal knowledge of the following facts, and if called as a witness, I would and could competently testify thereto.

2. I am the owner of Upp Geotechnology, Inc. a geotechnological firm that provides soils engineering and engineering geologic investigations. I have provided such services through this firm since 1983. I have reviewed and inspected the area of Emerald Lake Hills which is the subject of this lawsuit, including property of plaintiffs Michael Toschi and Tracy Toschi's situated at 2511 Park Road.

3. Emerald Lake Hills is a very hilly region of San Mateo County. The residence at 606 Park Road is sixty to eighty feet upslope from plaintiffs' residence. Plaintiffs Michael and Tracy Toschi live

across and on the opposite side of Park Road, north and downslope from the residence situated at 606 Park Road. Having inspected the topography of the area, along with topographical maps, historic stereographic aerial photos and ground level photos taken in July 2006, I have determined that plaintiffs reside in a very low-lying gully, which lends itself to the possibility of flooding with heavy rains.

4. Historically, the excess rainwater/stormwater runoff flows downhill from the peak of the hill beyond (farther south of) the Dallimonti residence, and flows across plaintiffs' property falling within the dry creek bed. (See Exhibit "A.") In addition, stormwater collects on both sides of Park Road, and drains into catch basins at the intersection of Park Road and Woodland Place near 603 Park Road.

5. I have reviewed the "Declaration of Bruce Matheson, P.E. In Support of Plaintiffs' Motion for Injunctive Relief" dated January 4, 2008, and the attached reports. In paragraph two of his declaration, he "observed that an asphalt swale had recently been constructed along the edge of the road . . ." and that "[t]his swale ended approximately five feet from the property line and, as a result, the collected water was now directly discharged onto Mr. Toschi's property." In paragraph three, Mr. Matheson opines that:

"the newly installed asphalt swale is incomplete and should be extended to the property line to eliminate the gap. If this is not done, it could result in undercutting the roadbed, the [loss] of more Heritage oak trees, as well as land sliding on the Toschi property, and present a serious safety hazard to the Toschis and their neighbors."

I disagree with Mr. Matheson's opinion for the following reasons. First, historically, the drainage in the area has always been downhill toward Mr. Toschi's property before Park Road was built in the late teens or early 1920s. There was also a natural broad swale leading downslope and across the area of the road (beyond the present five-foot gap in the newly paved roadside draingage swale) before the construction of the road. The road was built by "cut and fill" between about 1910 and 1920. Fill was placed across the broad swale. Because of settlement and downhill creep of this old fill, the downhill side of the road over the broad swale has begun to slope toward the Toschi property over the last ninety years. The road is settling where the natural swale was located, and the soil underneath is mimicking the natural swale.

6. Second, in the letter of October 30, 2006, Mr. Matheson refers to "a shallow swale and

berm: that Mr. Toschi "recently constructed." Mr. Toschi constructed a non-engineered earth berm (A row of loose soil.) The shallow swale had previously been there. The "recently constructed" and "newly installed" asphalt swale referred to in Mr. Matheson's declaration actually was simply new asphalt placed over the existing shallow swale by County Maintenance. Photographs show the "gap" at the downhill property line pre-existed the new asphalt.

7.  Third, the Heritage Oak tree that was lost was not likely lost due to the flow of surface water down the slope toward Mr. Toschi's property. Surface water on a steep slope is going to run over the ground and not pond to saturate the ground as Mr. Matheson has intimated. The five foot gap is also accelerating the flow of water down the slope because of the removal of the tree and placement of loose soil currently present. Fourth, Mr. Toschi's problem is a condition that predates his purchase of the house.

8.  Finally, the newly resurfaced swale should not be extended across the five foot gap, because such a remedy directing surface water away from the Toschi property will send more concentrated runoff down to the small inlet/catch basin downhill at the intersection of Park Road and Woodland Place, which may cause an overflow and flooding to the downhill neighboring properties downhill at the intersection of Park Road and Woodland Place. For the same reasons, plaintiffs' previous berm alongside Park Road should not have been built. Based on my review of Mr. Matheson's declaration and plaintiffs' motion, neither Mr. Matheson nor Mr. Toschi have given any consideration to the effect upon the downhill residences if their proposed remedy of extending the swale is employed.

9.  Mr. Matheson's October 30th 2006 report describes Park Road as "severely crowned near its center. I disagree with this observation. Based upon my inspection of the road, I believe it is slightly crowned because of the long term fill settlement. This condition, based upon my observation, predates the purchase of plaintiffs' home.

10. In his October 30, 2006 letter, Mr. Matheson "noted active downslope creep as well as leaning oak trees." Active soil creep is a natural process that occurs on virtually all slopes with soil. Soil creep likely is the cause of the leaning oak trees. I observed no evidence of slope instability.

I declare under penalty of perjury under the laws of the State of California that the foregoing is

1  true and correct.

2      Executed this 14th day of December, 2007 at Campbell, California.

_____
R. REXFORD UPP, Ph.D.

L:\LITIGATE\T_CASES\Toschi\Pleadings\Declaration of Rex Upp.doc

Case No. C-07-3625 MMC     4
DECLARATION OF R. REXFORD UPP IN SUPPORT OF COUNTY OF SAN MATEO'S OPPOSITION
TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF