**SCOTT LAW FIRM**

1375 Sutter Street, Suite 222
SAN FRANCISCO, CALIFORNIA
94109-7837
(415) 561-9601

JOHN HOUSTON SCOTT (State Bar #72578)
LIZABETH N. de VRIES (State Bar #227215)

**MOSLEY & GEARINGER LLP**

825 VAN NESS AVENUE, 4TH FLOOR
SAN FRANCISCO, CALIFORNIA
94109-7837
(415) 440-3102

BRIAN GEARINGER (State Bar #146125)

Attorneys for Plaintiff MICHAEL TOSCHI and TRACY TOSCHI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TOSCHI, and TRACY TOSCHI,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN MATEO, DON DALLIMONTI, RHONDA DALLIMONTI, NEIL CULLEN, BRIAN LEE, DAVID WEIDNER, and DOES ONE through FIFTY, inclusive,<br><br>Defendants. | Case No. C-07-3625 MMC<br><br>**REPLY BRIEF OF PLAINTIFFS MICHAEL TOSCHI AND TRACY TOSCHI IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF AGAINST DEFENDANT COUNTY OF SAN MATEO**<br>[Cal. Code Civ. Proc. § 526]<br><br>Date: January 4, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom 7, 19th Floor<br>Judge: The Honorable Maxine M. Chesney, presiding<br><br>Date Action Filed: July 13, 2007<br>Trial Date: November 3, 2008 |

## I. INTRODUCTION

The Opposition of defendant County of San Mateo (the "County") contains irrelevant factual declarations and inapposite (and incorrect in places) legal analysis. The County's efforts in this regard appear designed to avoid the crux of the motion of plaintiffs Michael and Tracy Toschi ("Plaintiffs"); this is, was the County's asphalt swale "negligently constructed, or constructed in a manner unnecessary to the public improvement" such that storm water runoff now is directed from alongside Park Road onto Plaintiffs' property? If this Court answers this question in the affirmative, then is such storm water runoff causing "irreparable injury" to Plaintiffs? Plaintiffs submit that the answer to both questions is yes. As such, Plaintiffs are entitled to an injunction requiring the County to remove or redesign its recently constructed asphalt swale bordering Plaintiffs' property and Park Road.

## II.  FACTUAL BACKGROUND

### A.  Uncontroverted Evidence

Notably absent from the County's Opposition are declarations from defendants Don and Rhonda Dallimonti (the "Dallimontis") or any evidence rebutting plaintiff Michael Toschi's declaration regarding the initial cause of the drainage problems onto Plaintiffs' property. Specifically, the County does not controvert the following evidence:

> Defendants Don and Rhonda Dallimonti also reside on Park Road and are neighbors of Plaintiffs. Defendants Don Dallimonti and Rhonda Dallimonti often drove their vehicles onto Plaintiffs' property when entering and exiting the driveway of their residence. The driving of vehicles by the Dallimontis damaged Plaintiffs' property by causing subsidence and altering the pattern of storm drainage from Park Road onto Plaintiffs' property, causing substantial erosion to Plaintiffs' property. (See Toschi Declaration, ¶ 2.)
>
> During the spring of 2004, Plaintiffs hired gardeners to repair their damaged property adjacent to Park Road. Plaintiffs intended that the repairs would prevent further erosion on Plaintiffs' property, stabilize the soil and protect the Heritage Oak trees on Plaintiffs' property. (See Toschi Declaration, ¶ 3.)
>
> As the repair work was underway, Defendant Don Dallimonti confronted the gardeners hired by Plaintiffs and threatened them with arrest and/or immigration investigation and deportation if they did not stop working. (See Toschi Declaration, ¶ 4.)

Likewise, the County does not controvert the following evidence regarding Lisa Ekers, the Road Operations Manager of the County Department of Public Works ("DPW").

> On or about August 10, 2006, Plaintiff Michael Toschi met with Lisa Ekers, the Road Operations Manager of the County Department of Public Works ("DPW"), to discuss a remedy for the erosion on Plaintiffs' property. Lisa Ekers agreed with Plaintiff Michael Toschi's proposed plan to construct a rainwater run-off swale to prevent further erosion to Plaintiffs' property. (See Toschi Declaration, ¶ 7.)

> On November 6, 2006, Plaintiffs met with Lisa Ekers to discuss Plaintiffs' attempt to perform work on their property in accordance with the Encroachment Permit. After inspecting Plaintiffs' property, Lisa Ekers informed Plaintiffs that it appeared that Plaintiffs had complied with the requirements of the Encroachment Permit. Specifically, Lisa Ekers observed that Plaintiffs had removed the berm and planted the English Laurel shrubs as approved by the Encroachment Permit. Lisa Ekers also stated that the County would repair the swale along the edge of Park Road adjacent to Plaintiffs' property to prevent water run-off and further erosion on Plaintiffs' property. (See Toschi Declaration, ¶ 12.)

**B.   The County Fails To Controvert Plaintiffs' Evidence Of The Historic Flow Of Surface Water Down Park Road To The County's Catch Basin**

Plaintiff Michael Toschi submitted a declaration that provided in pertinent part: "Historically, the County maintained Park Road to prevent rainwater from accumulating and draining on to the upper portion of our property." (See Toschi Declaration, ¶ 1.) In addition, five neighbors (Tom Linebarger, Lilya Vorobey, Age Lyssand, Jack Purcell and Grace Whipps) of Plaintiffs have submitted declarations that the "historic pattern" of storm water runoff along Park Road was directly down the street to a catch basin, not onto Plaintiffs' property. These five neighbors all attest to the fact that they are familiar with the portion of Park Road that boarders Plaintiffs' property. All five neighbors further attest to the following facts: "Historically rain/surface water would flow down Park Road, parallel to the Toschi's property, to a catch basin in the road at the corner of Park Road and Woodland Place. Approximately one year ago I noticed that a crude asphalt swale was constructed along the Toschi's property line that was designed to divert water run-off from Park Road onto the Toschi's property rather than continuing down Park Road to a County catch basin." (See Declarations of Tom Linebarger, Lilya Vorobey, Age Lyssand, Jack Purcell and Grace Whipps in Support of Motion for Injunctive Relief, ¶ 2.)

Notably absent from the County's Opposition is a single declaration from any one who lives in the neighborhood of this section of Park Road. Instead, the County only submitted the declaration of DPW employee Mark Marelich, which provides in pertinent part:

> The newly paved asphalt swale ended approximately four feet from the edge of plaintiff's property line and that of 607 Park Road. This gap was left in order not to alter the historic flow of surface water downhill to plaintiffs' property. This condition (the gap or washed-out area) has existed for at least the last fifteen years I have worked in this area.... (See Marelich Declaration, ¶ 13.)

Mr. Marelich's declaration fails to address the "historic pattern" of stormwater runoff along Park Road. Instead, Mr. Marelich uses the vague and undefined term "surface water" even though he used the term "stormwater" earlier in his declaration. Specifically, Mr. Marelich stated that "stormwater collects on both sides of Park Road, and drains into a catch basin at the southerly side of the intersection of Park Road and Woodland Place, and a small inlet at the northerly side of the intersection of Park Road and Woodland Place near 603 Park Road." (See Marelich Declaration, ¶ 4.) Plaintiffs agree that this was the historic pattern of storm water runoff from Park Road before the County installed its asphalt swale on December 4, 2006.

Instead, it appears that Mr. Marelich in referring to "surface water", he is referring to a different source of water; that is, surface water coming from the uphill side of Park Road, "across Park Road, down the slope to plaintiff's creek bed." (See Marelich Declaration, ¶ 4.) This source of water is not at issue in this motion.

### III. TIMELINE OF RELEVANT EVENTS DEMONSTRATING CIRCUMSTANTIAL EVIDENCE OF THE COUNTY'S MOTIVE TO PUNISH PLAINTIFFS

**Spring 2006** – A large, Heritage oak tree falls on Plaintiff's property. (See Toschi Declaration, ¶ 5.)

**July 2006** – Plaintiffs created a berm on their property adjacent to Park Road in order to protect their property from the increased storm water runoff caused by the Dallimontis driving over Plaintiffs' property. (See Toschi Declaration, ¶¶ 2 and 6.) During a meeting between plaintiff Michael Toschi and DPW employee Mark Marelich, defendant Don Dallimonti objected to Plaintiffs' creation of a berm on their property. (See Toschi Declaration, ¶ 6.)

**August 23, 2006** – Plaintiffs obtain an Encroachment Permit, which provided in pertinent part: "Remove soil and concrete materials bermed at top of slope to location outside the road right of way; remove dead and fallen oak tree at property line; fill hole resulting from tree removal with native soil; plant creeping daisy and English laurel behind line of existing trees as shown on attached drawing." (See Exhibit A to Toschi Declaration, ¶ 8.)

**September 16, 2006** – Plaintiff Michael Toschi filled out a "Citizen's Complaint" form on behalf of Plaintiffs against Defendant Don Dallimonti which alleged in pertinent part: "Several counts of verbal assault, threats and physically unstable and aggressive behavior. Also abuse of power and manipulation in County business, violent and reckless driving in both personal vehicles and County Sheriff patrol vehicle." (See Supplemental Toschi Declaration, ¶ 2 and Exhibit B to Plaintiffs' July 13, 2007 Complaint, ¶ 29.)

**September 24, 2006** – Defendant David Weidner, a County Sheriff's Deputy and co-worker of defendant Don Dallimonti, responded to a call from the Dallimontis. Deputy Weidner approached plaintiff Michael Toschi on his own property. Deputy Weidner demanded that plaintiff Michael Toschi produce a County permit for the work being done on Plaintiffs' property. (See Supplemental Toschi Declaration, ¶ 3 and Plaintiffs' July 13, 2007 Complaint, ¶¶ 19, 31 and 33.)

**September 27, 2006** – Plaintiffs' filed an application in the San Mateo Superior Court for a Restraining Order against the Dallimontis. (See Exhibit A to Supplemental Toschi Declaration, ¶ 4.)

**September 28, 2006** – Plaintiff Michael Toschi was interviewed by Lt. Alcantara and Sgt. Rodriguez of the San Mateo County Sheriff's Office at his home regarding his Citizen's Complaint against Don Dallimonti. (See Supplemental Toschi Declaration, ¶ 5.)

**October 10, 2006** – The San Mateo Superior Court issues a Restraining Order to Stop Harassment against Don and Rhonda Dallimonti. (See Exhibit B to Supplemental Toschi Declaration, ¶ 6.)

**October 20, 2006** – The County issues a Notice to Remove Encroachment to Plaintiffs. (See Exhibit D to Toschi Declaration, ¶ 11.)

**December 4, 2006** – The County "placed asphalt concrete pavement in the drainage swale.... The newly paved asphalt swale ended approximately four feet from the edge of plaintiffs' property line and that of 607 Park Road." (See Declaration of Mark Marelich, ¶ 13.)

## IV. APPLICABLE STATUTORY AND CASE LAW PERMITTING THE INJUNCTIVE RELIEF REQUESTED BY PLAINTIFFS

California Code of Civil Procedure Section 526(a) provides an injunction may be granted in the following case, among others:

> (2) When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or *great or irreparable injury*, to a party to the action. (Italics added.)

The test for whether an injunction may be issued in circumstances involving a public entity's public improvement is set forth in *Sheffet v. County of Los Angeles*, 3 Cal.App.3d 720 (1970). In *Sheffet*, the public entity approved the subdivision plans of private contractor and accepted the streets constructed by the private contractor. *Id.* at 734. The design of the street caused surface water to flow over the crown of the street and flood plaintiff's property. *Id.* at 727. The *Sheffet* court set forth the following test for when an injunction may issue – as opposed to seeking monetary damages – for an injury caused by a public improvement. "[N]either the consequentially injured party nor the courts may superimpose corrective authority upon public works already created *unless they are negligently constructed, or constructed in a manner unnecessary to the public improvement.*" *Id.* at 737-738; italics added. The *Sheffet* court concluded:

> The over-crown run-off, however, is but the result of negligent design of the crown height or road pitch, and has no relationship to the reasonableness of the public improvement sought to be created. *As to such unnecessary, unintentional, and negligently created consequences of the public improvement, we see neither logic nor reason which prohibits the issuance of an injunction to prohibit the maintenance thereof.*

*Id.* at 738; italics added. Thus, this Court may issue an injunction in this action if this Court determines that the asphalt swale was (1) "negligently constructed" or (2) "constructed in a manner unnecessary to the public improvement."

## V. LEGAL ANALYSIS

### A. Under The *Erie* Doctrine, California Code of Civil Procedure Section 526(a), Rather Than Federal Rule Of Civil Procedure 65, Applies To This Motion

The County states that "this Court is bound by Federal Rule of Civil Procedure 65 and Ninth Circuit precedent for the granting of preliminary injunctions." (See the County's Opposition, p. 5, ll. 20-21.) The County is wrong. Instead, this Court should apply California Code of Civil Procedure Section 526(a) when determining Plaintiffs' request for injunctive relief. Specifically,

> [S]ince a federal court adjudicating a State-created right solely because of the diversity of citizenship is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.... *[T]he intent of [the Erie] decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.* The nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result.

*Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 646 -647 (9th Cir. 1988); italics added. *See also Sun Oil Co. v. Wortman*, 486 U.S. 717, 108 S.Ct. 2117, 2124, 100 L.Ed.2d 743 (1988) (thrust of *Erie* is to ensure substantial uniformity of outcome between cases tried in federal and state courts). The above application of the *Erie* doctrine in a diversity action applies equally in this instance where this Court is exercising supplemental jurisdiction over Plaintiffs' state law claims. *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055, fn. 2 (9th Cir. 2000) ("a federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction").

Therefore, this Court should apply California Code of Civil Procedure Section 526(a) to Plaintiffs' Motion for Injunctive Relief.

### B. Plaintiffs Have Satisfied The Irreparable Injury Requirement Of California Code of Civil Procedure Section 526(a)

Plaintiffs have satisfied the requirements of California Code of Civil Procedure Section 526(a), specifically subpart (2), which provides as follows: "When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or *great or irreparable injury*, to a party to the action." Italics added. Plaintiffs have submitted the Declaration of Bruce Matheson, a civil engineer and President of Foundation Technologies, Inc. On October 30, 2006, Mr. Matheson rendered the following opinion:

> It is our opinion, based on our visual observations, that it would be imprudent to remove the swale and berm constructed by you, unless the County is prepared to construct a more permanent asphalt or concrete lined swale. Removal of the existing could, and probably would, create further instability on the upper slope of your property. This could result in, undercutting of the roadbed, the loss of more heritage Oak trees, as well as landsliding on your property, and present *a serious safety hazard to you and your neighbor*.

(See Exhibit A to Matheson Declaration, ¶ 1; italics added.)

On December 14, 2006 (after the County installed the asphalt swale on December 4), Mr. Matheson rendered the following opinion:

> It is our opinion, based on our most recent observations, that the newly installed asphalt swale is incomplete and should be extended to the property line to eliminate the gap. If this is not done, it could result in undercutting of the roadbed, the loss of more heritage Oak trees, as well as landsliding on your property, and present *a serious safety hazard to you and your neighbor*.

(See Exhibit B to Matheson Declaration, ¶ 3; italics added.) It should be noted that Mr. Matheson's letters pre-dated this action by many months, which Plaintiffs filed on July 13, 2007.

In its Opposition, the County submits the declarations of the following four individuals: (1) James Porter -- Director of the County's Department of Public Works; (2) Mark Marelich -- a Road Construction Inspector for the County's Department of Public Works; (3) Roger G. Fry -- an engineer retained by the County; and (4) R. Rexford Up -- a geologist retained by the County. None of these four declarations addresses the issue of "landsliding" on Plaintiffs' property. Further, none of these declarations addresses the "serious safety hazard" noted by Mr. Matheson.

Finally, none of these declarations offers admissible evidence addressing "the loss of more heritage Oak trees."[1]

Because the County has not rebutted Plaintiffs' evidence as to the irreparable injury requirement of California Code of Civil Procedure Section 526(a)(2), Plaintiffs are entitled to the injunctive relief that they are seeking.[2]

### C. Plaintiffs Are Entitled To Injunctive Relief Under The Thirteenth Claim for Relief In The Complaint

Plaintiffs' Complaint alleges an Thirteenth Claim for Relief against the County for injunctive relief based upon "irreparable harm and inadequate legal remedy." Specifically, Plaintiffs allege in their Complaint in pertinent part:

> 117. An economically viable and practical engineering solution exists that, if adopted by defendants, would eliminate all of the erosion and other damage being caused by the discharge of rainwater runoff from County's Properties onto Plaintiffs' real property, and eliminate the risk of personal injury to Plaintiffs and Plaintiffs' neighbors.
>
> 118. The County's failure and refusal to install this economically viable and practical engineering solution to handle the storm water runoff that is currently being directed onto Plaintiffs' real property not only is damaging Plaintiffs' real property but also is exposing Plaintiffs and Plaintiffs' neighbors to an unreasonable risk of personal injury.
>
> 119. Plaintiffs should not be driven off of Plaintiffs' real property or otherwise deprived of the use and enjoyment of their real property as a result of The County's refusal to install this economically viable and practical engineering solution.
>
> 120. Plaintiffs do not have an adequate remedy at law in that Plaintiffs' real property is unique, and the damage being caused to Plaintiffs' real property, and the risk of physical injury being posed to Plaintiffs and Plaintiffs' neighbors by the discharge of rainwater runoff from County's Properties onto Plaintiffs' real property, is unreasonably interfering with Plaintiffs' quiet enjoyment of Plaintiffs' real property.

---

[1] Messrs. Marelich and Upp submit speculative theories as to what caused Plaintiffs' first large, Heritage Oak tree to fall in 2006. (See Plaintiffs' Objections to Evidence Submitted By Defendants' In Opposition To Motion For Injunctive Relief.)

[2] Assuming *arguendo* that Federal Rule of Civil Procedure 65 applies to this motion, Plaintiffs should prevail because Plaintiffs have demonstrated "probable success on the merits and the possibility of irreparable injury" based upon the Declaration of Bruce Matheson and the failure of the County to rebut his declaration as discussed above. (See the County's Opposition, p. 5, l. 28 to p. 6, l. 1.)

Therefore, Plaintiffs need not demonstrate that they "are likely to succeed on the merits of their inverse condemnation claim" in order to prevail on the instant motion. (See the County's Opposition, p. 6, l. 15.) Even though it is not a requirement for the instant motion, Plaintiffs are likely to prevail on their inverse condemnation claim.[3]

### D. The County Has Prevented Plaintiffs From Placing Sandbags On Their Property To Mitigate Their Damages

Plaintiff Michael Toschi declared in pertinent part: "On several occasions since December 7, 2006, we placed sandbags on their property to divert water run-off away from Plaintiffs' property. On each occasion that we placed sandbags on their property, employees of the County removed the sand bags, apparently after the Dallimontis called the County." (See Toschi Declaration, ¶ 16.) The County did not refute this allegation. Therefore, the County has admitted – by its omission in this regard – that it has prevented Plaintiffs from mitigating their damages by preventing Plaintiffs from placing sandbags on their property.

The County's denial of Plaintiffs' right to mitigate is contrary to California law. Specifically, "an owner whose property is being taken or damaged by a public entity is under a duty to take all reasonable steps available to minimize his loss." *Albers v. Los Angeles County*, (1965) 62 Cal.2d 250, 269. At the same time, the County has alleged that Plaintiffs' "failed to mitigate their damages." (See County's August 14, 2007 Answer, Third Affirmative Defense, p. 13, l. 24.) Thus, the County has taken contradictory positions; that is, the County contends that Plaintiffs' have "failed to mitigate their damages" while at the same time, the County refuses to allow Plaintiffs to mitigate their damages by placing sandbags on their property.[4] This Court

---

[3] Under the strict liability standard for inverse condemnation, a public entity is liable, without any showing of fault on the County's part or foreseeability of harm, if Plaintiffs can establish that their property is being damaged by the operation of a "public work." *Albers v. County of Los Angeles*, 62 Cal.2d 250, 261-262 (1965); *see also Belair v. Riverside County Flood Control Dist.*, 47 Cal.3d 550, 562-563 (1988).

[4] The County likely will attempt to argue that allowing Plaintiffs to mitigate will *damage* other property owners. To this point, the County's hydrologist merely states, "A diversion [from Plaintiffs' property down Park Road] of this type would probably result in *some* runoff entering Lot 607 and *some* runoff ponding at the inlet at the corner of Lot 603. (See Fry Declaration, ¶10; italics added.) Mr. Fry does not offer an opinion as to whether "some runoff" and/or "some runoff ponding" will result in any damage.

should not allow the County to have it both ways. Either the Court should require the County to remove or redesign its asphalt swale or the Court should prohibit the County from preventing Plaintiffs' mitigation efforts by removing Plaintiffs' sandbags.

## VI.   CONCLUSION

For the reasons stated above, Plaintiffs request that this Court issue an immediate injunction directing the County to remove or redesign its asphalt swale in order to prevent further damage to Plaintiffs' property. In the alternative, Plaintiffs request that this Court issue an injunction prohibiting the County from interfering with Plaintiffs' efforts to mitigate their damages by placing sandbags on their property.

Dated:  December 21, 2007

             MOSLEY & GEARINGER LLP


             By:_____/s/ Brian Gearinger
             BRIAN GEARINGER
             Attorneys for Plaintiffs MICHAEL TOSCHI and TRACY TOSCHI