IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TOSCHI, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>COUNTY OF SAN MATEO, et al.,<br><br>    Defendants.<br>_____ / | No. C-07-3625 MMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTY; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION OF CLAIMS AND ISSUES** |

     Before the Court are defendants County of San Mateo ("County"), Mark Marelich ("Marelich"), Joe Costa ("Costa"), and David Weidner's ("Weidner") (collectively, "County defendants") "Motion for Summary Adjudication of Claims and Issues," filed January 30, 2009, and plaintiffs Michael Toschi ("Toschi") and Tracy Toschi's (collectively, "Toschis") "Motion for Partial Summary Judgment as to Defendant County of San Mateo's Liability for Inverse Condemnation and Equal Protection Violation," also filed January 30, 2009. Having read and considered the papers filed in support of and in opposition to each motion and the arguments of counsel at the March 6, 2009 hearing, the Court rules as follows.

## DISCUSSION

**A.    First Claim for Relief (Retaliation in Violation of the First Amendment)**

     In their First Amended Complaint ("FAC"), the Toschis, in their First Claim for Relief, allege the County defendants retaliated against the Toschis for the Toschis' having

complained about the conduct of certain County employees.  (See FAC ¶ 60.)  Specifically, the Toschis allege that after their complaints, County employees dismantled a dirt berm the Toschis had built, removed shrubs, trees, and greenery from the Toschis' property, constructed a "crude" asphalt swale along the edge of Park Road adjacent to the Toschis' property, and removed sandbags the Toschis had placed to divert water run-off from their property.  (See id. ¶¶ 45-47.)  In addition, the Toschis allege that after they complained about defendant Don Dallimonti ("Dallimonti") to the County Sheriff's Office, Weidner unlawfully detained Toschi.  (See id. ¶ 35.)  As discussed below, the County defendants argue they are entitled to summary adjudication of the Toschis' First Claim for Relief.

### 1. Removal of the Berm and Trees

The County defendants assert that their removal of the Toschis' berm and trees on December 4, 2006 was in response to the Toschis' violation of state statutes and County of San Mateo ordinances concerning encroachments on County highways and roads, and, consequently, that in order to prevail on their retaliation claim in connection with such removal, the Toschis must show that the statutes and ordinances at issue were selectively enforced against them.  See Osborne v. Grussing, 477 F.3d 1002, 1006 (8th Cir. 2007) (holding "a plaintiff who seeks relief from valid adverse regulatory action on the ground that it was unconstitutional retaliation for First Amendment-protected speech must make the same showing that is required to establish a claim of selective prosecution").  The Toschis deny that they violated any statute or ordinance and argue that, in any event, they have presented sufficient evidence of selective enforcement.

The Court first considers whether the removal of the Toschis' berm and trees on December 4, 2006 constituted "valid adverse regulatory action."  See id.  Under California law, a county may, "by notice, require the removal of any . . . encroachment . . . from any county highway."  See Cal. Sts. & High. Code § 1481.  For purposes of this provision, the term "encroachment" includes "any structure or object of any kind or character placed, without the authority of law, either in, under or over any portion of the highway."  See Cal. Sts. & High. Code § 1480(b).  The term "highway" includes "all or any part of the entire

1  width of right of way of a county highway, whether or not such entire area is actually used
2  for highway purposes." See Cal. Sts. & High. Code § 1480(a).  The required notice "shall
3  be served upon the occupant or owner of the land . . . or shall be left at the place of
4  residence of such occupant [or] owner . . . if he resides within the county and is known to
5  the person giving such notice." See Cal. Sts. & High. Code § 1482.  "The notice shall
6  specify the breadth of the highway, the place and extent of the encroachment, and shall
7  require the removal of such encroachment within 10 days." Id.  After such notice is given,
8  "[i]f the encroachment is not denied, but is not removed within five days from and after
9  service or posting of the notice, the road commissioner may remove the encroachment at
10 the expense of the owner or occupant of the land." See Cal. Sts. & High. Code § 1485.

11       Here, it is undisputed that the Toschis' berm and trees were within the right of way of
12 Park Road, and that such road is a county highway.  It is also undisputed that the Toschis'
13 did not have a permit to maintain their berm in such right of way.  Consequently, contrary to
14 the Toschis' argument, the berm and trees constituted a structure or object placed, without
15 the authority of law, "in . . . the highway", and thus, were an "encroachment." See §
16 1480(b).  Further, it is undisputed that, on October 20, 2006, Neil Cullen ("Cullen"), Director
17 of the County Department of Public Works ("DPW"), provided the Toschis with the notice
18 required by § 1482 (see Decl. John Houston Scott in Supp. Pls.' Opp'n ("Scott Opp'n
19 Decl.") Ex. T) and that, thereafter, the Toschis did not deny or remove the encroachment
20 (see id. Ex. X (Letter from Cullen to Toschi, dated December 29, 2006)).  Consequently,
21 pursuant to § 1485, the County's removal of the berm and trees on December 4, 2006 was
22 a valid action.[1]

23       The Court next considers whether, with respect to such removal, the Toschis have
24 made the "showing that is required to establish a claim of selective prosecution." See
25 Osborne, 477 F.3d at 1006.  To prove a claim of selective prosecution, a plaintiff must

---

[1] In light of such finding, the Court does not reach the County defendants' argument that the Toschis' maintenance of their berm and trees also constituted a violation of County ordinances.

3

show "that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted [and] that the government's discriminatory selection of him was based upon . . . his exercise of his first amendment right to free speech." See id. (internal quotation and citation omitted; alterations in original).

Here, there is triable issue as to whether the Toschis were treated differently from other similarly situated homeowners in the County with respect to the removal by County employees, including Marelich and Costa, of the Toschis' berm and trees. In particular, the Toschis have presented evidence that the County has not required the removal of conceded encroachments maintained by Grace Whipps ("Whipps") and Henry Curci ("Curci"), the respective owners of properties located immediately adjacent to the Toschis' property and the next property thereafter (see Scott Opp'n Decl. Ex. J ("Deposition of Mark Marelich") at 64:15-23, 65:22-66:3 (noting location of Whipps' fence within public right-of-way); id. at 107:14-109:17 (noting encroachment of Curci's house into public right-of-way), while the County defendants have presented evidence that other property owners have been required to install "drainage culverts, boxes or other drainage facilities at their own expense rather than diverting water onto the street or other properties" (see Decl. Mark Marelich in Supp. County Defs.' Mot. ("Marelich Decl.") ¶ 17).[2]

Further, the County defendants have failed to show no triable issue exists as to whether the County's removal of the berm and trees was "based upon" the Toschis' exercise of their First Amendment Rights. See Osborne, 477 F.3d at 1006. In that regard, the Court first observes that "[t]he causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two." See Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004); Allen v. Iranon, 283 F.3d 1070, 1078 (9th Cir. 2002) (noting "an eleven-month gap in time is within the range that has been found to support an inference" of retaliation).

---

[2]The Toschis' objection to this statement on the ground of relevance (see Pls.' Objections at 13:20-26) is overruled.

4

Here, although the County defendants have presented evidence that the County, prior to the Toschis' having complained about any County employee or having obtained a Temporary Restraining Order ("TRO") against Don and Rhonda Dallimonti, had informed the Toschis that their berm needed to be removed (see Marelich Decl. Ex. D (Notice to Remove Encroachment, dated July 5, 2006)), the actual removal of the berm occurred relatively shortly after the filing of such complaints and the issuance of such TRO (see Scott Opp'n Decl. Ex. P (Citizen's Recommendation / Complaint Form, dated September 16, 2006, regarding Don Dallimonti); id. Ex. R (Temporary Restraining Order against Don and Rhonda Dallimonti, dated September 27, 2006); Decl. Michael Toschi ("Toschi Decl.") ¶ 30 (stating Toschi made complaint against Weidner on November 6, 2006); Scott Opp'n Ex. K ("Daily Notes of Rhonda Dallimonti") at unnumbered 5 (stating berm and trees were removed on December 4, 2006)).

Moreover, a triable issue exists as to whether the County defendants' proffered rationale for removing the Toschis' berm and trees, specifically, that such berm and trees diverted sufficient rainwater so as to overburden a nearby drainage inlet and cause flooding of a neighbor's property, constituted a valid, non-retaliatory basis for enforcing the statutes and ordinances at issue against the Toschis but not against Whipps or Curci.  In particular, the Toschis have presented evidence that the County defendants, at the time of the removal of the berm and trees, were unaware of whether such berm and trees actually presented a risk of flooding (see Scott Opp'n Decl. Ex. EE (County's Answers to Toschi's Interrogatories, Set Three) at 4:22-27 (stating design capacity for water flow through drainage inlet was "[n]ot known")), whereas the County defendants have presented evidence that the drainage inlet in question had flooded several times in the past (see Decl. V. Raymond Swope III in Supp. County Defs.' Reply ("Swope Reply Decl.") Ex. G ("Deposition of Henry A. Curci") at 14:3-15:14).

Accordingly, to the extent the Toschis' First Claim for Relief is based on the removal

of the Toschis' berm and trees, the County defendants motion will be denied.[3]

### 2.   Removal of Sandbags

The County defendants argue the removal of the Toschis' sandbags, like the removal of their berm and trees, constituted valid official action. The County defendants have presented no evidence, however, that the requisite notice under § 1482 was provided to the Toschis in connection with the removal of the sandbags. Consequently, the County defendants have failed to show such removal was lawful, and the County defendants have not shown an unlawful removal of the sandbags nevertheless could be found to be not retaliatory on the record presented. Further, as discussed above, a triable issue exists as to selective enforcement with respect to the Toschis' encroachments.

Accordingly, to the extent the Toschis' First Claim for Relief is based on the removal of the Toschis' sandbags, the County defendants' motion will be denied.

### 3.   Alleged Unlawful Detention

In the FAC, Weidner is named as a defendant to the First Claim for Relief, based on his alleged unlawful detention of Toschi on September 24, 2006. In their opposition to the County defendants' motion, however, the Toschis state they "do not contend that [ ] Weidner conspired with the Dallimontis to detain [ ] Toschi in retaliation for complaints made by the Toschis against Dallimonti" (see Opp'n to County Defs.' Mot. at 13:2-3) and that their retaliation claims are based on two sets of events, specifically, "the December 4, 2006 events directed and supervised by defendants Joe Costa and Mark Marelich," i.e., the removal of the berm and trees and the re-construction of the asphalt swale, and "the subsequent removal of the sandbags from the Toschis' property at the request of Rhonda Dallimonti" (see id. at 14:20-22).

Accordingly, to the extent the County defendants seek summary adjudication of the

---

[3] The County defendants make no separate argument as to their entitlement to summary adjudication of the Toschis' First Claim for Relief to the extent such claim is based on the reconstruction of the asphalt swale, which occurred on the same date as the removal of the berm and trees. Accordingly, to the extent the First Claim for Relief is based on the re-construction of the swale, the County defendants' motion likewise will be denied.

6

1  Toschis' First Claim for Relief as alleged against Weidner, the County defendants' motion
2  will be granted.

### 4. Liability of the County

The County defendants argue that the County itself cannot be liable for any alleged retaliatory conduct, for the reason the Toschis cannot show such conduct was undertaken pursuant to an official policy, practice, or custom, a showing required under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). In support of such argument, the County defendants point to the declaration of the current director of the County Department of Public Works, James Porter, who states that the DPW "does not have a policy, procedure, or custom of retaliating against, or conspiring to retaliate against, citizens that have filed complaints against County Officers." (See Decl. James Porter ("Porter Declaration") ¶ 10 (emphasis in original).)

The Toschis, however, have presented sufficient evidence to create a triable issue as to whether the alleged retaliatory actions, specifically, the removal of the berm and trees, the re-construction of the asphalt swale, and the removal of the sandbags, were authorized or ratified by the person with final policymaking authority as to such actions. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (holding decisions of "officials whose acts or edicts may fairly be said to represent official policy . . . may give rise to municipal liability under § 1983") (internal quotation and citation omitted); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final"). In particular, the Toschis have presented evidence that Neil Cullen, the County's former Director of Public Works, authorized or ratified the conduct at issue. (See Scott Opp'n Decl. Ex. BB ("Deposition of Neil Cullen"), at 115:21-116:1[4]; id. Ex. X (Letter from Neil Cullen to Michael Toschi), at 1-2.[5])

---

[4]The above-cited portion of the Deposition of Neil Cullen reads as follows: "Q: So is it fair to say that sometime between November 15th, 2006 and November 30th, 2006, you made the decision on behalf of the DPW that the Toschi encroachment on Upper Park Road would be removed by personnel of the DPW?  A: Yes." (See Deposition of Neil

7

Accordingly, to the extent the County defendants seek summary adjudication of the Toschis' First Claim for Relief as alleged against the County, the County defendants' motion will be denied.

### B. Second Claim for Relief (Conspiracy to Retaliate in Violation of the First Amendment)

To prove a conspiracy between a governmental entity and private parties under § 1983, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (quoting Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983)).

The County defendants argue they are entitled to summary adjudication of the Toschis' Second Claim for Relief, on the ground that the Toschis have no evidence there was a "meeting of the minds" between any of the defendants with respect to any alleged retaliatory action taken by the County. See id. Because the County defendants have done no more than assert the Toschis have no such evidence, however, the County defendants have failed to carry their burden on summary judgment as to such claim. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105 (9th Cir. 2000) (holding "[a] moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence"; noting, in typical case, "the moving party will have made reasonable efforts, using the normal tools of discovery, to discover whether the nonmoving party has enough evidence to carry its burden of persuasion at trial").

---

Cullen at 115:21-116:1.)

[5] With respect to the work performed on December 4, 2006, the letter states, in relevant part: "[P]er notice to you, on December 4, 2006, the Department of Public Works removed twelve (12) plants and the soil and concrete berm from the public right-of-way adjacent to your parcel, backfilled the resulting holes, applied straw mulch to the area where the plants and berm were removed, and placed asphalt concrete pavement in the swale as we have previously indicated would be done." (See Scott Opp'n Decl. Ex. X, at 1.) With respect to the removal of the sandbags, the letter states, in relevant part: "[W]e will remove sand bags that are placed inappropriately in the public right-of-way or if their placement diverts the historic course of storm water that has not been approved through the encroachment permit process, which was the case in the recent removal of sandbags that were placed on the Park Road side of your property." (See id. at 2.)

8

The County defendants next argue that the County is entitled to summary adjudication of the Toschis' Second Claim for Relief on the basis of the above-discussed argument under Monell. As noted, however, the Court has not found such argument persuasive in connection with the First Claim for Relief, and the County defendants have offered no reason why such argument would apply with greater force to the Second Claim for Relief.

Lastly, although, in the FAC, Weidner is named as a defendant to the Second Claim for Relief, the Toschis have made no argument that Weidner participated in or conspired with anyone with respect to the alleged retaliatory conduct discussed above in connection with the First Claim for Relief.

Accordingly, to the extent the County defendants seek summary adjudication of the Toschis' Second Claim for Relief with respect to Marelich, Costa and the County, the County defendants' motion will be denied, and to the extent the County defendants' seek summary adjudication with respect to Weidner, the County defendants' motion will be granted.

**C. Third Claim for Relief (Deprivation of Liberty in Violation of the Fourth and Fourteenth Amendments)**

In their FAC, the Toschis allege that Weidner unlawfully detained Toschi on September 24, 2006. Specifically, the Toschis allege that Weidner would not allow Toschi to leave Weidner's custody before the two men drove from the Toschis' home to Toschi's office and Toschi produced a copy of his Encroachment Permit. (See FAC ¶¶ 32-36, 64.) The County defendants argue that Toschi was not unlawfully seized or detained by Weidner and that even if an unlawful seizure or detention did occur, Weidner is entitled to qualified immunity.

The Court first addresses the issue of whether a seizure occurred. "[A] person has been 'seized,' within the meaning of the Fourth Amendment, only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." See United States v. Mendenhall, 446 U.S. 544, 554 (1980). Here,

there is a triable issue as to whether Toschi was seized. (See Toschi Decl. ¶ 20 (stating "Deputy Weidner told me that his orders were to not let me out of his custody until I produced the permit"); Deposition of David Weidner, at 55:15-18 (stating Toschi "was free to leave at any time").)

The Court next addresses the question of whether, if a seizure occurred, it was lawful. Although they dispute any arrest in fact occurred, the County defendants accept Toschi's version of the events at issue for purposes of summary judgment and argue, in essence, that Weidner had probable cause to arrest Toschi for violating San Mateo County Ordinances 3.76.010 and 1.08.101(a) and California Streets and Highway Code § 1460. (See County Defs.' Req. for Judicial Notice Ex. D, at 1 (Ordinance 3.76.010) (providing any person, "before installing pipes, conduits, culverts, cables, catch basins, or any other form of construction, temporary or otherwise, in the public streets or roads in the unincorporated areas of San Mateo County, shall first obtain a permit"); id. Ex. E, at 1 (Ordinance 1.08.010(a)) (providing "any person violating any of the provisions or failing to comply with any of the mandatory requirements of this code[ ] shall be guilty of a misdemeanor"))[6]; see also Cal. Sts. & High. Code § 1460(d) (providing permit is required to "[p]lant, remove, cut, cut down, injure or destroy any tree, shrub, plant or flower growing within any county highway"; further providing that any person who does any such act without a permit "is guilty of a misdemeanor").

In support of their argument, the County defendants point to evidence that, when Weidner arrived on the scene, he saw Toschi supervising someone planting trees on top of the Toschis' berm, which, as noted, was located within a county highway,[7] and was told by Rhonda Dallimonti that Toschi did not have a permit for such work. (See Deposition of David Weidner at 48:11-25.) When Weidner asked Toschi if he had a permit, Toschi stated

---

[6] Good cause appearing, the Request for Judicial Notice is hereby GRANTED, and the Toschis' objection to Exhibit E to such Request on grounds of relevance (see Pls.' Objections at 2:16-19) is hereby overruled.

[7] As discussed above, the term "highway" as used in the applicable statute includes rights of way.

10

that he did. (See id. at 64:2-4.) After purportedly making two attempts to search for it in his house, however, Toschi was unable to produce a permit. (See id. at 64:5-22.) At this point, it was reasonable for Weidner to conclude that Toschi did not have a valid permit for the alterations he was making.[8] Such lack of permit, coupled with Weidner's observation of the tree planting taking place within the county highway, gave Weidner probable cause to arrest Toschi for a violation of California Streets and Highways Code § 1460, and did so irrespective of whether Weidner subjectively believed such probable cause existed. See Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (noting "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action") (internal quotation and citation omitted).

        Alternatively, even if Weidner did not have probable cause to arrest Toschi, Weidner is entitled to qualified immunity. In the qualified immunity analysis, if a constitutional violation has occurred, "the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." See Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001). This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." See Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal quotation and citation omitted). Here, as noted, Weidner had been told that Toschi did not have a permit for his work, and Toschi, despite being given two chances to locate a permit in his house, was unable to do so. Under such circumstances, it cannot be said that only a plainly incompetent law enforcement officer would believe he had probable cause to arrest or cite Toschi, and there is no showing that Weidner knew Toschi did have a permit; indeed, the evidence is undisputed that he did not.

---

[8] The Court notes that the encounter at issue took place on a Sunday, and there is no evidence that Weidner could have called the Department of Public Works or any other County office to inquire as to whether a permit had been issued that allowed Toschi to perform the work in question.

11

(See Scott Decl. Ex. O (Encroachment Permit granting permission to remove berm and to plant trees "behind line of existing trees," with expiration date of September 15, 2006).)

Accordingly, to the extent the County defendants seek summary adjudication of the Toschis' Third Claim for Relief, the County defendants' motion will be granted.

**D.  Fourth Claim for Relief (Municipal Liability for Unlawful Detention in Violation of the Fourth and Fourteenth Amendments)**

The County defendants argue that the County cannot be held liable for any allegedly unlawful detention of Toschi, for the reason that the Toschis cannot show any such detention was undertaken pursuant to an official policy, practice, or custom, as required under Monell, see 436 U.S. at 690. As the Court has found Weidner had probable cause to arrest Toschi, and thus, that there was no constitutional violation, the County cannot be held liable under Monell. See Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (holding "[b]ecause there is no constitutional violation, there can be no municipal liability").

Accordingly, to the extent the County defendants seek summary adjudication of the Toschis' Fourth Claim for Relief, the County defendants' motion will be granted.

**E.  Fifth Claim for Relief (Conspiracy to Cause Unlawful Detention in Violation of the Fourth and Fourteenth Amendments)**

Neither the Toschis nor the County defendants make any argument with respect to the Fifth Claim for Relief that has not already been discussed in connection with the Third and Fourth Claims for Relief.[9] Accordingly, for the reasons stated above, to the extent the County defendants' seek summary adjudication of the Toschis' Fifth Claim for Relief with respect to both Weidner and the County, the County defendants' motion will be granted.

**F.  Sixth Claim for Relief (Intentional and Arbitrary Discrimination in Violation of the Fourteenth Amendment)**

The Toschis and the County defendants have moved, respectively, for summary

---

[9] As discussed above in connection with the First Claim for Relief, the Toschis do not contend the alleged detention of Toschi was retaliatory on the part of Weidner, and, in any event, the record contains no evidence, e.g., evidence of selective enforcement by Weidner or his superiors, to support such a finding.

12

judgment and summary adjudication of the Toschis' Sixth Claim for Relief.

### 1. The Toschis' Motion

In support of their motion, the Toschis argue they were discriminated against, in violation of their right to Equal Protection under the Fourteenth Amendment, when the County removed their dirt berm. Specifically, the Toschis assert, the County has allowed neighbors of the Toschis' to maintain non-permitted "walls and berms in the public right of way" (see Pls.' Mot. at 11:24-26) without a rational basis for distinguishing between the Toschis and those neighbors.

"Where, as here, state action does not implicate a fundamental right or a suspect classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating that [he or she] 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Here, as discussed in connection with the First Claim for Relief, there is a triable issue as to whether the Toschis were treated differently from other similarly situated homeowners in the County when the County removed the Toschis' berm and trees.

Accordingly, to the extent the Toschis seek summary judgment on their Sixth Claim for Relief, their motion will be denied.

### 2. The County Defendants' Motion

The County defendants have moved for summary adjudication of the Sixth Claim for Relief solely on the basis of their Monell argument as discussed above in connection with the First Claim for Relief. As discussed, however, the Court has not found such argument persuasive in connection with the First Claim for Relief, and the County defendants have offered no reason why such argument would apply with greater force to the Sixth Claim for Relief.

Accordingly, to the extent the County defendants seek summary adjudication of the Toschis' Sixth Claim for Relief, the County defendants' motion will be denied.

**G.   Seventh Claim for Relief (False Imprisonment and Unnecessary Delay in Releasing) and Eighth Claim for Relief (Interference with Rights in Violation of California Civil Code § 52.1)**

The Toschis' Seventh and Eighth Claims for Relief are based, as are their Third, Fourth, and Fifth Claims for Relief, on the alleged unlawful detention of Toschi by Weidner. Neither the Toschis nor the County defendants, however, make any argument with respect to the Seventh or Eighth Claims for Relief that was not made in connection with the Third Claim for Relief. Consequently, for the reasons stated above, to the extent the County defendants seek summary adjudication of the Toschis' Seventh and Eighth Claims for Relief, the County defendants' motion will be granted.

**H.   Ninth Claim for Relief (Trespass for Entry onto Property without Permission)**

Neither the Toschis nor the County defendants have moved for summary judgment or summary adjudication of the Toschis' Ninth Claim for Relief.

**I.   Tenth Claim for Relief (Dangerous Condition of Public Property – Creation and Notice of Dangerous Condition) and Eleventh Claim for Relief (Nuisance – Harm to Health and Obstruction to Free Use of Property)**

The County defendants contend the Toschis' Tenth and Eleventh Claims for Relief are barred by the one-year statute of limitations for the presentation of government tort claims to a local government body, as provided in California Government Code § 911.2. The parties do not dispute that such claims were required to be presented to the County and that the Toschis presented such claims on March 21, 2007. (See FAC ¶ 57; Answer to FAC ¶ 57.) Nor is there any dispute that such claims were first pleaded in the Toschis' Complaint, filed July 13, 2007. (See Compl. ¶¶ 87-104.) The County defendants argue, however, that Toschi knew of the facts underlying such claims in 2003. In support of their argument, the County defendants have presented evidence that Toschi talked with defendants Costa and Marelich regarding his concerns "about the erosion on water runoff on Park Road as being a safety hazard to [his] property in the fall of 2003." (See Deposition of Michael Toschi, at 167:18-25.)

The Toschis do not dispute this evidence and do not otherwise dispute that Toschi knew of the facts underlying the Tenth and Eleventh Claims for Relief in 2003. Rather, the

14

1 Toschis assert, the statute of limitations on their claims has not begun to run, for the reason
2 that "the continuous damage to [their] property has not stabilized." (See Pls.' Opp'n to
3 County Defs.' Mot., at 14:1-2.) In support of this argument, the Toschis rely on Lee v. L.A.
4 County Metro. Transp. Auth., 107 Cal. App. 4th 848 (2003), in which the California Court of
5 Appeals held a claim for inverse condemnation arising from the ongoing construction of the
6 Los Angeles subway system was not barred by the statute of limitations because the claim
7 did not accrue during the period in which construction was ongoing. See id. at 858. As the
8 Court of Appeals explained in a subsequent case, however, Lee is inapplicable where, as
9 here, the defendants "are not performing ongoing activities." See Lyles v. State, 153 Cal.
10 App. 4th 281, 291 (2007).

11 Accordingly, to the extent the County defendants seek summary adjudication of the
12 Toschis' Tenth and Eleventh Claims for Relief, the County defendants' motion will be
13 granted.

14 **J.    Twelfth Claim for Relief (Inverse Condemnation – The Operation of a Public Drainage System)**

15
16 The Toschis and the County defendants have moved, respectively, for summary
17 judgment and summary adjudication of the Toschis' Twelfth Claim for Relief.

**1.    The Toschis' Motion**

18 The Toschis argue that their claim for inverse condemnation is governed by a strict
19 liability standard, under which an owner of real property must "receive compensation for
20 any actual physical injury to that property, whether foreseeable or not, that a public
21 improvement, as deliberately designed and constructed, proximately caused." See Bunch
22 v. Coachella Valley Water Dist., 15 Cal. 4th 432, 440 (1997) (citing Albers v. County of Los
23 Angeles, 62 Cal. 2d 250, 263-64 (1965)). As set forth below, however, even assuming,
24 arguendo, such standard applies to the instant claim, the Toschis have failed to show that
25 any public improvement undertaken within the three-year limitations period, see Cal. Code
26 Civ. Proc. § 338(b), proximately caused any damage to their property.
27
28 The Toschis argue that Park Road, which runs adjacent to the Toschis' property, is a

15

public improvement, and that water running off such road and onto the Toschis' property has caused damage to such property. It is undisputed, however, that Park Road was constructed in the 1920s by a private developer and was "accepted for maintenance" by the County in 1953 (see Scott Opp'n Decl. Ex. A (Report of Robert G. Fry) at 1), and further, that the Toschis were aware, by "the fall of 2003," that water running off the road was causing damage to their property (see FAC ¶ 15). The instant action was not filed until July 13, 2007, and, consequently, to the extent the Toschis' Twelfth Claim for Relief is based on the construction of Park Road, such claim is time-barred.[10]

The Toschis further argue that the County's maintenance and operation of Park Road, and, in particular, the re-paving of the asphalt swale adjacent to the Toschis' property on December 4, 2006, constitutes a public improvement. Under California law, a "repair" of a road is considered a "work of improvement." See Cal. Civ. Code § 3106. The County defendants do not dispute that such re-paving was conducted by a public entity and that it was conducted within the applicable limitations period.[11] There is a triable issue, however, as to whether such re-paving caused any change in the flow of water onto the Toschis' property. (See Marelich Decl. ¶ 14 (stating gap between swale and edge of Toschis' property "has existed for at least the last sixteen years")[12]; Toschi Decl. ¶ 8 (stating "[h]istorically, water [ ] collect[ed] on both sides of Park Road and [went] to the basin inlet at Woodland and Park"; further stating, "[s]ince the swale on the Dallimontis' side of Park Road is completely blocked and the swale on my side of Park Road was reconstructed to force water down the slope of my property, now hardly any water drains to

---

[10] For the same reasons discussed above in connection with the Tenth and Eleventh Claims for Relief, the Toschis' argument that the statute of limitations has not begun to run on their Twelfth Claim for Relief is unavailing.

[11] The County defendants' argue that the re-paving of the swale was not an "improvement," for the reason that it was "merely a resurfacing of a swale that already existed." (See Mot. at 20:6-7.) The County defendants have cited no authority, however, suggesting such resurfacing does not constitute a "repair" within the meaning of § 3106.

[12] Although plaintiffs object to several portions of the Marelich Declaration, they do not object to this statement.

16

the catch basin at the intersection of Woodland and Park").)

Accordingly, to the extent the Toschis seek summary judgment on their Twelfth Claim for Relief, the Toschis' motion will be denied.

**2.     The County Defendants' Motion**

The County defendants, relying on Locklin v. City of Lafayette, 7 Cal. 4th 327 (1994), argue that the applicable standard for the Toschis' inverse condemnation claim is one of reasonableness, rather than strict liability, and further argue their conduct was, as a matter of law, reasonable. In Locklin, the California Supreme Court held:

> When alterations or improvements on upstream property discharge an increased volume of surface water into a natural watercourse, and the increased volume and/or velocity of the stream waters or the method of discharge into the watercourse causes downstream property damage, a public entity, as a property owner, may be liable for that damage. The test is whether, under all the circumstances, the upper landowner's conduct was reasonable.

See id. at 337.

"A natural watercourse is a channel with defined bed and banks made and habitually used by water passing down as a collected body or stream in those seasons of the year and at those times when the streams in the region are accustomed to flow." See id. at 345. "It is wholly different from a swale, hollow, or depression through which may pass surface waters in time of storm not collected into a defined stream." See id.

Here, there is a triable issue as to whether the alleged incursion of water on the Toschis' property was the result of a discharge "into a natural watercourse." (See Scott Opp'n Decl. Ex. E ("Deposition of Robert G. Fry") at 49:15-50:2 (describing discharge of water into "gap" that has not yet become "a channel"); Marelich Decl. ¶ 5 (describing flow of water toward "dry creek bed traversing the center of [the Toschis'] property and down slope from Park Road"). Consequently, the Court cannot conclude that, as a matter of law, the reasonableness standard announced in Locklin applies to the instant claim, and, in any event, the County defendants have not demonstrated that no triable issue exists as to whether the County's actions were reasonable. (See Scott Opp'n Decl. Ex. EE (County's Answers to Toschi's Interrogatories, Set Three) at 4:22-27 (stating design capacity for

17

water flow through drainage inlet was "[n]ot known")); see also Locklin, 7 Cal. 4th at 337-38 (holding governmental entity "will be liable if it fails to use reasonably available, less injurious alternatives").

The County defendants further argue that, even under a strict liability standard, the Toschis cannot point to any public improvement undertaken within the limitations period that proximately caused damage to their property. As discussed above, however, the Toschis have pointed to the December 4, 2006 re-paving of the asphalt swale, which, as noted, the County defendants have failed to show is not an "improvement," and, as discussed above, a triable issue exists as to causation.

Accordingly, to the extent the County defendants seek summary adjudication of the Toschis' Twelfth Claim for Relief, the County defendants' motion will be denied.

**K.   Thirteenth Claim for Relief (Declaratory Relief – Public Easement versus Private Easement)**

Neither the Toschis nor the County defendants have moved for summary judgment or summary adjudication of the Toschi's Thirteenth Claim for Relief.

**L.   Fourteenth Claim for Relief (Injunctive Relief – Irreparable Harm and Inadequate Legal Remedy)**

In their Fourteenth Claim for Relief, the Toschis allege there is "[a]n economically viable and practical engineering solution" that would eliminate the damage allegedly being caused to the Toschis' property by the discharge of rainwater runoff from Park Road. (See FAC ¶ 123.) The Toschis seek a permanent injunction directing the County to install this "solution." (See FAC Prayer ¶ 29.) In their motion, the County defendants argue that the Toschis are not entitled to such a permanent injunction, for the reason, inter alia, that any injury suffered by the Toschis can be fully compensated with monetary damages.

Under federal law, a plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." See eBay, Inc. v.

MercExchange, L.L.C., 547 U.S. 388, 391 (2006).[13]

Here, as noted, the Toschis seek an injunction directing the County to install an unspecified engineering "solution."[14] The Toschis, however, have offered no argument, let alone submitted any evidence to support a finding, that any such solution could not be installed by the Toschis themselves.

Accordingly, to the extent the County defendants seek summary adjudication of the Toschis' Fourteenth Claim for Relief, the County defendants' motion will be granted.

**M.    Fifteenth Claim for Relief (Negligent Infliction of Emotional Distress)**

The Toschis' Fifteenth Claim for Relief is not alleged against any of the County defendants.

**CONCLUSION**

For the reasons stated above:

1. The Toschis' Motion for Partial Summary Judgment is hereby DENIED.

2. The County defendants' Motion for Summary Adjudication of Claims and Issues is hereby GRANTED in part and DENIED in part, as follows:

   a. To the extent the County defendants seek summary adjudication of the Toschis' Third, Fourth, Seventh, Eighth, Tenth, Eleventh, and Fourteenth Claims for Relief, the County defendants' motion is GRANTED.

   b. To the extent the County defendants seek summary adjudication of the Toschis' First, Second, and Fifth Claims for Relief as alleged against Weidner, the County defendants' motion is GRANTED.

---

[13] The Toschis contend the standard for obtaining injunctive relief in this case is governed by California law. The Court disagrees. See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 541 (6th Cir. 2007) (holding, in context of preliminary injunctive relief, in diversity case in federal court, federal law provides "the factors to consider in granting a[n] . . . injunction").

[14] One potential "solution" appears to be the installation of a pipe running from the road to the "flume area" at the bottom of the Toschis' property; the Toschis' expert has stated such a pipe would "collect the water coming off the road and prevent[ ] erosion and help the stability of the slope" on which such property is located. (See Swope Decl. Ex. D (Deposition of Daniel F. Dyckman), at 112:8-113:5.)

         c. To the extent the County defendants seek summary adjudication of the Toschis' Fifth Claim for Relief as alleged against the County, the County defendants' motion is GRANTED.

         d. In all other respects, the County defendants' motion is DENIED.

**IT IS SO ORDERED.**

Dated: April 13, 2009

                                              MAXINE M. CHESNEY
                                              United States District Judge